### In re MULTI–PIECE RIM PRODUCTS LIABILITY LITIGATION.

### Appeal of FIRESTONE TIRE & RUBBER CO.

### In re MULTI–PIECE RIM PRODUCTS LIABILITY LITIGATION.

### Appeal of William HADDON, Jr., M.D., Benjamin Kelley, Brian O'Neill, John Arminio, Jackson Wong, Paul R. Rohr, Sharon Goins, and the Insurance Institute for Highway Safety.

### Nos. 80–1267, 80–1284.

United States Court of Appeals, District of Columbia Circuit.

Argued Feb. 20, 1981.

Decided May 29, 1981.

---

Patrick W. Lee, Washington, D. C., with whom Wendy N. Munyon, Washington, D. C., was on the brief for Firestone Tire and Rubber Co., appellant in No. 80–1267 and appellee in No. 80–1284.

Ronald G. Precup, Washington, D. C., with whom Lucien Hilmer, Washington, D. C., was on the brief for Haddon, Jr., M.D., et al., appellees in No. 80–1267 and cross appellants in No. 80–1284.

Before WILKEY and MIKVA, Circuit Judges, and JAMES F. GORDON [*], Senior Judge, United States District Court for the Western District of Kentucky.

Opinion for the Court filed by Circuit Judge MIKVA.

MIKVA, Circuit Judge:

Firestone Tire & Rubber Co. (Firestone) appeals from an order of the district court denying Firestone's motion to compel discovery from certain non-party witnesses in connection with a products liability suit. The witnesses cross-appeal from the district court's failure to award them the expenses of their opposition to Firestone's motion. Finding that the court acted within its discretion on both counts, we affirm.

### I. FACTUAL AND PROCEDURAL BACKGROUND

Firestone is one of the manufacturers of articles known as "multi-piece wheels and wheel rims," whose safety is currently a major issue in a series of products liability

---

[*] Sitting by designation pursuant to 28 U.S.C. § 294(d).

cases. Seventeen personal injury and wrongful death cases were consolidated for pretrial proceedings by the Judicial Panel on Multidistrict Litigation, *see In re Multi-Piece Rim Products Liability Litigation*, 464 F.Supp. 969 (Jud.Pan.Mult.Lit.1979), and some fourteen further cases have been added thereto. The consolidated proceedings have gone forward under the supervision of a multidistrict transferee judge in the United States District Court for the Western District of Missouri. On April 23, 1979, in his First Pretrial Order, the transferee judge designated eight common issues as appropriate for consolidated discovery.

The appellees are the Insurance Institute for Highway Safety (IIHS) and seven of its employees. IIHS is a nonprofit organization funded by motor vehicle insurance companies; one of its principal objectives is to focus public and governmental attention on possible causes of highway "losses." The discovery Firestone seeks in the present appeal relates to IIHS efforts to focus public and government attention on multi-piece wheels and wheel rims. The major channel for these efforts was submission of information to the National Highway Traffic Safety Administration (NHTSA), although IIHS has also participated in a rulemaking proceeding of the Occupational Safety and Health Administration (OSHA).

Firestone claims that IIHS has provided erroneous and misleading information to government agencies, and that some of this misinformation may be reflected in government reports impugning the safety of multi-piece wheels and rims. Such reports could be highly damaging to Firestone in a products liability case if they were put before a jury as admissible hearsay under Federal Rule of Evidence 803(8). That rule authorizes admission of

> Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth (A) the activities of the office or agency, or (B) matters observed pursuant to duty imposed by law as to which matters there was a duty to report, ... or (C) in civil actions and proceedings ... factual findings resulting from an investigation made pursuant to authority granted by law, *unless the sources of information or other circumstances indicate lack of trustworthiness.*

(emphasis added). Firestone's announced purpose in seeking discovery from IIHS and its employees is to uncover evidence that would enable Firestone to make the showing of untrustworthiness necessary to keep government conclusions about multi-piece rims out of court.

Firestone's discovery attempts antedate the consolidation of the seventeen original cases in the Western District of Missouri. In September 1978, Firestone obtained subpoenas duces tecum from the Clerk of the District Court for the District of Columbia for discovery in connection with an action then pending in the District Court for the Northern District of Alabama, *Clayton v. Firestone Tire & Rubber Co.*, Civ. No. 78–G0396S (N.D.Ala.). Firestone then served these subpoenas on IIHS's President (one of the seven present appellees) and its General Counsel (whose successor is among the appellees) demanding

> all documents, books, notes[,] correspondence, drafts, and paperwriting whatsoever in any way reflecting, referring, or relating to the initiation, investigation, research, preparation and submission, of the Petition for the Initiation of a Defect Investigation for Multi-piece Wheels submitted to the National Highway Traffic Safety Administration; and any and all documents reflecting, referring, or relating to said petition from the date of submission until the present date.

Joint Appendix (J.A.) at 145. IIHS produced over 13,000 pages of documents in response to these subpoenas, but denied Firestone's right to inquire into the preparation of the NHTSA petition or its reliability. IIHS sought a protective order in the District Court for the District of Columbia, and an order was granted, announcing that IIHS and the two subpoenaed witnesses "need not respond to deposition questions relating to the preparation, accuracy or reliability of the Institute's Petitions transmit-

ted on June 14, 1978 and October 2, 1978 to the National Highway Traffic Safety Administration of the Department of Transportation." *Clayton v. Firestone Tire & Rubber Co.*, Misc. No. 78–0307 (D.D.C. Nov. 17, 1978), J.A. 146. No reasons were stated for the court's order.

*Clayton* was one of the seventeen cases consolidated by the Judicial Panel on Multidistrict Litigation in early 1979. Firestone expressed its concern about Federal Rule of Evidence 803(8) to the multidistrict transferee judge, although the record suggests that no mention was made of the protective order IIHS had obtained the preceding fall. The transferee judge responded by designating as the eighth common issue for multidistrict discovery:

> *Government Reports.* Whether any reports prepared by any governmental body pertaining to multi-piece rims and/or multi-piece wheels are accurate and trustworthy.

*In re Multi-Piece Rim Products Liability Litigation*, M.D.L. No. 362, First Pretrial Order at 4 (W.D.Mo. Apr. 23, 1979), J.A. 24.

Armed with this pretrial order, Firestone returned to IIHS and served subpoenas duces tecum from the District Court for the District of Columbia on the seven appellees, having noticed depositions scheduled to begin in January 1980. The new subpoenas required

any and all documents, books, notes, correspondence, drafts, and paper writings received or generated between September 1, 1978, and the date of this subpoena and all travel vouchers, desk calendars, telephone logs, minutes of the IIHS Board of Directors meetings, communications among and between insurance companies and the IIHS, its staff, or Board of Directors received or generated between September 11, 1976, and the date of this subpoena, which are within your possession or control, in any way reflecting communications relating to or preparation for or participation in or communication about National Highway Traffic Safety Administration rulemakings, analyses, or investigations relating to multi-piece truck rims.

J.A. 147. The witnesses did not object to producing documents directly relating to NHTSA proceedings, but refused to comply with requests for inquiry into the preparation, accuracy, or reliability of the petitions to NHTSA. J.A. 101. Firestone then asked the multi-district transferee judge in Missouri to grant an order compelling discovery. On January 16, 1980, the transferee judge denied Firestone's motion, asserting that only the district court here had jurisdiction to direct compliance with its own subpoenas.[1] Accordingly, Firestone

---

1. The transferee judge stated in his order:

> This Court has determined that it has no jurisdiction to enter any of the requested orders. Rule 45(d)(1) provides that, in the event the written objection is made to the production of documents, "the party serving the subpoena shall not be entitled to inspect and copy the materials except pursuant to an order of the court from which the subpoena was issued." Since the subpoena was issued in the District Court for the District of Columbia, that is the only court that has jurisdiction to issue an order requiring the documents to be produced at the deposition.
> Rule 37(a)(1) defines the appropriate court for entertaining an application for an order compelling discovery and provides that "an application for an order to a deponent who is not a party shall be made to the court in the district where the deposition is being taken." Wright and Miller, *Federal Practice and Procedure*, § 2287, point out that the reason for the rule is that the court in the district where

the suit is pending cannot impose any sanction against a witness who is not a party and any order to compel would be unenforceable. In its suggestions in support of its motion Firestone urges that because this Court is a transferee court designated by the Multidistrict Litigation Panel, the above clear rules are not applicable. In the case of *In re Wheat Farmers Antitrust Class Action*, 440 F.Supp. 1022 (1977), the District Court for the District of Columbia directly held that Rules 37(a) and 45(d) were applicable in a multi-district case pending in the State of Oklahoma, and this Court has been cited no authority to support Firestone's position.

*In re Multi-Piece Rim Products Liability Litigation*, M.D.L. No. 362, Order at 2–3 (W.D.Mo. Jan. 16, 1980). The power of the transferee judge to compel discovery in another district is not the subject of this appeal, and we need not resolve Firestone's contention that the transferee judge erred in failing to recognize that he "may exercise the powers of a district judge in

commenced this civil action in the District Court for the District of Columbia to compel discovery.

After briefing and argument, the district court denied Firestone's motion. The court stated "two principal reasons" for its action. J.A. 204. First, the prior protective order granted to IIHS in November 1978 was still effective in the multidistrict litigation into which the *Clayton* case had been consolidated. The district judge observed that his colleague's earlier order, "although he explicated no reasons for doing what he did, is a sound order and it should govern our disposition of this matter as the law of the case." *Id.* Second, the multidistrict transferee judge's designation of an issue for discovery had concerned only government reports, and the "petitions of the Insurance Institute are anything but a report, or record, or a statement, or data compilation in any form of public officers, or agencies." *Id.*[2] Inquiry into the trustworthiness of government reports, therefore, did not create a need "to get into, particularly at this time, the underlying material which was the basis for the two petitions filed by the Insurance Institute." *Id.*

At the same time, the district court refused to award IIHS the expenses of its opposition to Firestone's motion. IIHS had argued that Firestone's efforts were utterly without justification and constituted an abuse of the discovery process. The district court recognized the possibility of "a certain harassment of the Insurance Institute," but rejected the proposed sanction. J.A. 205.

■ Firestone appealed from the denial of its discovery motion, and IIHS then cross-appealed from the denial of an award of expenses. Since the litigation was in the district court solely for purposes of the dis-

covery motion, the court's disposition of that motion was an appealable final judgment. *Westinghouse Elec. Corp. v. City of Burlington*, 351 F.2d 762 (D.C.Cir.1965).

## II. THE SIGNIFICANCE OF THE PRETRIAL ORDER

Firestone insists that the district court should be reversed for failing to defer to the multidistrict transferee judge's rulings. Firestone regards the designation of the trustworthiness of government reports among the common issues for discovery as fully dispositive of the principal issues in this case. According to Firestone, the district court "had no discretion or authority to deny the discovery sought by Firestone, because that discovery was previously authorized by the multidistrict transferee judge. [It] could only enforce what [he] had authorized." Brief for Appellant at 20. We agree that the transferee judge had the power to enter an order with the effect Firestone describes, but even a cursory examination of the order the transferee judge actually entered demonstrates that Firestone's argument misconstrues and distorts his intent.

■ The transferee judge's authority to coordinate consolidated pretrial proceedings in multidistrict cases is the essential contribution of the multidistrict transfer procedure. That judge has the power to set aside pretrial rulings of transferor courts, and courts performing auxiliary roles must be guided by the transferee judge's rulings. *See In re Sundstrand Data Control, Inc. Patent Litigation*, 443 F.Supp. 1019 (Jud. Pan.Mult.Lit.1978) (refusing to constrain transferee judge's exclusive control of discovery); *In re The Upjohn Co. Antibotic*

any district for the purpose of conducting pretrial depositions," 28 U.S.C. § 1407(b) (1976); *cf. In re Corrugated Container Anti-Trust Litigation*, 620 F.2d 1086 (5th Cir. 1980) (where multidistrict transferee judge in Texas presides over deposition in Southern District of New York, contempt appeal lies to Second, not Fifth Circuit).

**2.** We agree with the district court's interpretation of the pretrial order as using the phrase

"government reports" as a kind of shorthand embracing all the public "[r]ecords, reports, statements, or data compilations, in any form," that would be eligible for admissibility under Federal Rule of Evidence 803(8). That rule provided the rationale for the pretrial order, and no reason appears for arbitrarily restricting discovery to one class of the potentially threatening documents.

*Cleocin Products Liability Litigation,* 81 F.R.D. 482 (E.D.Mich.1979); *Celanese Corp. v. E.I. du Pont de Nemours & Co.,* 58 F.R.D. 606 (D.Del.1973); Weigel, *The Judicial Panel on Multidistrict Litigation, Transferor Courts and Transferee Courts,* 78 F.R.D. 575, 579 (1977) ("control over all aspects of discovery").

The language of the pretrial order, set out more fully in the margin,[3] clearly evinces an intent only to distinguish between common issues appropriate for consolidated discovery and "local" issues to be handled separately in the discretion of the transferor courts. The transferee judge stated his belief "that confining the multidistrict aspect of these cases within stated boundaries will benefit all parties by enabling them to intelligently pursue discovery on the local issues contemporaneously with discovery on the common issues." *In re Multi-Piece Rim Products Liability Litigation,* M.D.L. No. 362, First Pretrial Order at 1 (W.D.Mo. Apr. 23, 1979), J.A. 21.

The designation of common issues for discovery was not a ruling that all questions arguably relevant to the common issues must be answered, regardless of their oppressiveness and without an opportunity to assert claims of privilege. The language of the order itself reflects the transferee judge's awareness that such issues might arise in further proceedings. After designating as common issue number three the possibility that one or more of the defendant manufacturers withheld relevant information or made material misrepresentations to NHTSA, the court stated its sympathy "with defendants' contentions that discovery on these three issues will involve detailed inquiries into the personal lives of their officers and employees," and observed that "[t]he Court will, of course, entertain suggestions from defendants at the second conference regarding procedures for conducting discovery on the merits of these issues which will minimize, to whatever extent possible, inconvenience to individuals and interruption of normal business activity." *Id.* at 2–3, J.A. 22–23.

Thus, nothing in the text of the transferee judge's order expresses an intent inconsistent with the protective orders issued twice by the District Court for the District of Columbia.[4] The designation of a common issue for discovery is relevant to the decision the district court was called upon to make, but is insufficient to dictate its outcome.

---

**3.** The list of eight common issues for discovery is preceded by the following introductory matter:

> The initial conference in this multidistrict proceeding was held in Kansas City, Missouri on March 29, 1979. All parties were given an opportunity to comment in writing on what should be designated as the common issues for discovery, as opposed to those issues which are more local in nature and which should be pursued by counsel in the respective transferor districts. These comments have now been received and the Court is in a position to define the parameters of this proceeding. The Court realizes that identification of issues at this point is not strictly in accord with the procedures set forth in the Manual For Complex Litigation. However, the Court believes that confining the multidistrict aspect of these cases within stated boundaries will benefit all parties by enabling them to intelligently pursue discovery on the local issues contemporaneously with discovery on the common issues.
>
> The following numbered paragraphs will constitute the issues upon which national discovery will be permitted through this Court. Any issue not set forth below is deemed local and any discovery on that issue should be conducted simultaneously by the various local counsel in their respective districts. As indicated at the conference, the Court intends for the parties to conduct concurrent discovery on local issues without specific authorization. The common issues for discovery are: ....

*In re Multi-Piece Rim Products Liability Litigation,* M.D.L. 362, First Pretrial Order at 1–2 (W.D.Mo. Apr. 23, 1979), J.A. 21–22.

**4.** In fact, the record indicates that Firestone never even informed the transferee judge of the November 1978 protective order; IIHS and its employees are not parties in the consolidated litigation, and were not participants in the pretrial conference. Firestone's pretrial statement, *see* note 3 *supra,* did mention its desire to seek discovery from IIHS concerning the NHTSA petitions, but is silent on any IIHS objections. J.A. 7–8. These facts do not in themselves limit the effect of the transferee judge's order, but they are consistent with the preliminary purpose that its language suggests the order was intended to serve.

## III. THE LAW OF THE CASE

 By adhering to the "law of the case," a court gives continuing effect to a ruling made earlier in the same litigation. The phrase "expresses the practice of courts generally to refuse to reopen what has been decided, not a limit on their power." *Messenger v. Anderson*, 225 U.S. 436, 444, 32 S.Ct. 739, 740, 56 L.Ed. 1152 (1912); *see Naples v. United States*, 359 F.2d 276, 277 n.1 (D.C.Cir.1966). This practice is tempered by a sound discretion, permitting reexamination in the light of changes in governing law, newly discovered evidence, or the manifest erroneousness of a prior ruling.

 The doctrine of the law of the case has its application in multidistrict litigation as well as in traditional litigation. *See, e. g., ABC Great States, Inc. v. Globe Ticket Co.*, 316 F.Supp. 449 (E.D.Pa.1970). But sound exercise of the discretion implicit in this doctrine requires attention to the special authority granted to the multidistrict transferee judge. Even when the transferee judge does not supersede another court's order, his rulings may require a reexamination of its rationale. Proper coordination of complex litigation may be frustrated if other courts do not follow the lead of the transferee court.

 IIHS's attempts to remain sheltered behind the protective order it obtained, in 1978 have led IIHS to state an unduly extreme position concerning the continuing validity of that order. IIHS insists that the district court would be justified in relying entirely on the law of the case doctrine, despite the transferee judge's order. We conclude that such reliance would have been an abuse of discretion; the intervening order of the transferee judge required the district court in this case to reexamine the propriety of any protective orders previously issued.[5]

As the district court observed, the judge who issued the November 1978 protective order "explicated no reasons for doing what he did." J.A. 204. The text of the order, set out in the margin below,[6] is absolutely silent as to the basis for the decision. The court might well have believed that the accuracy of government statements concerning multi-piece wheels was irrelevant to the single lawsuit before it, or that its relevance was so tangential as to be easily outweighed by countervailing interests.

The proper scope of relevance for nationwide discovery in the consolidated cases was authoritatively redefined by the multidistrict transferee judge in his pretrial order. Outstanding protective orders could no longer govern discovery if their premises were inconsistent with this ruling. And an order whose premises were nowhere stated must be considered anew in the light of the designation of common discovery issues. Mere reliance on the earlier order as the law of the case would be an evasion of a district court's responsibilities in multidistrict litigation.

---

5. Firestone not only rejects the validity of the protective order after the transferee judge's action, but argues that, since the law of the case doctrine only involves orders within the same litigation, it has no application to a ruling in an individual case once that case has been consolidated into a multidistrict proceeding. Since we hold that, under the circumstances of this case, the intervening pretrial order precludes reliance on the law of the case doctrine, we need not consider Firestone's novel contention that all prior orders spontaneously lose their validity at the moment of consolidation.

6. The order merely states:
 Upon consideration of the Motion for Protective Order filed by Dr. William Haddon, Jr. and Andrew R. Hricko, Esquire, joined in by their employer, the Insurance Institute for Highway Safety, and the Memoranda in support thereof and in opposition thereto, and the Court having heard oral argument, it is
 ORDERED that the Motion is granted, and that the movants need not respond to deposition questions relating to the preparation, accuracy or reliability of the Institute's Petitions transmitted on June 14, 1978 and October 2, 1978 to the National Highway Traffic Safety Administration of the Department of Transportation.
*Clayton v. Firestone Tire & Rubber Co.*, Misc. No. 78–0307 (D.D.C. November 17, 1978). In calling attention to the fact that this order states no reasons, we do not mean to criticize the court for not issuing a "speaking order."

In fact, the district court did *not* merely rely on the earlier order. In its oral Findings of Fact and Conclusions of Law, the court stated, "*It is our judgment* that [the previous judge's protective] order, although he explicated no reasons for doing what he did, *is a sound order* and it should govern our disposition of this matter as the law of the case." J.A. 204 (emphasis added). The court then went on to state a second "principal reason" for its decision, that the IIHS petitions to NHTSA were not themselves government reports, and that the trustworthiness of subsequent government statements was an insufficient basis for probing inquiry into the material underlying those petitions. This explanation, which accounts for the "soundness" of the protective order, is the proper basis of the district court's ruling, and it is to this explanation that we now turn.

## IV. THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION

### A. *Refusal to Compel Discovery*

■ A district court has broad discretion in its resolution of discovery problems that arise in cases pending before it. As this court has recently observed, the scope of appellate review is equally narrow when the discovery pertains to litigation pending elsewhere.

> Our review authority, of course, is quite limited. Trial courts have a broad discretion in discovery matters and appellate courts will reverse only for abuse—for "action which is arbitrary, fanciful, or clearly unreasonable." This standard applies equally to discovery sought in a proceeding ancillary to the principal action . . . .

*Marine Petroleum Co. v. Champlin Petroleum Co.*, No. 77–1345, 27 F.R.Serv.2d 160, 166 (D.C.Cir. Apr. 12, 1979), *rehearing denied*, 29 F.R.Serv.2d 668 (D.C.Cir. May 30, 1980) (footnotes omitted) (upholding determination that "exceptional circumstances" were absent that would justify deposing expert under Fed.R.Civ.P. 26(b)(4)(B)). *Accord, Premium Serv. Co. v. Sperry & Hutchinson Co.*, 511 F.2d 225 (9th Cir. 1975) (up-

holding quashing of unduly burdensome subpoena); *In re Surety Ass'n of America*, 388 F.2d 412 (2d Cir. 1967) (affirming district court's discretion to determine relevancy of subpoenaed documents, but altering scope of court's order).

■ The same standard of review is appropriate where the principal action pending elsewhere is a multidistrict case in a transferee court. Disregard of the transferee judge's orders would be an abuse of discretion subject to correction on appeal, but where no conflict with the transferee judge's discovery program arises, the district court's decision will be based on the same considerations whether the principal action is a consolidated multidistrict proceeding or a single traditional case in another district. The scope of our review should accordingly be the same.

■ The trial court's discretion extends to determining the relevance of discovery requests, assessing their oppressiveness, and weighing these factors in deciding whether discovery should be compelled. *See Marshall v. Westinghouse Elec. Co.*, 576 F.2d 588 (5th Cir. 1978); *Premium Serv. Corp. v. Sperry & Hutchinson Co.*, 511 F.2d 225 (9th Cir. 1975); 4 J. Moore, Federal Practice ¶ 26.56[1] at 26–135 (1979). In the present case, the district court was considering subpoenas demanding "all travel vouchers, desk calendars, telephone logs" and other documents "in any way reflecting communications relating to or preparation for or participation in or communication about" IIHS petitions to NHTSA. The asserted relevance of the documents requested was that they might provide some indication of the "untrustworthiness" of government reports based in part on the IIHS petitions, beyond the evidence derived from the contents of the petitions themselves.

■ Under these circumstances, the district court concluded that, as the IIHS petitions were not themselves potentially admissible, Firestone's investigation of their preparation was too remote to the litigation to justify the discovery requested:

[C]ertainly these two petitions of the Insurance Institute are anything but a report, or record, or a statement, or data compilation in any form of public officers, or agencies.

In sum, we have no government report, or reports, to which the subpoena is directed and therefore, there is no justification in determining whether some subsequently issued report is accurate and trustworthy to get into, particularly at this time, the underlying material which was the basis for the two petitions filed by the Insurance Institute.

J.A. 204. Given the sweeping nature of Firestone's desired inquiry, the quantity of documents already made available, and the lack of any showing of particularized need for more limited discovery, we cannot say that the district court abused its discretion by granting the protective order.

Since the scope of our appellate review is limited, the conclusion that the district court acted within its discretion ends our inquiry. We neither approve nor disapprove the court's exercise of discretion or its expressed rationale. Nor does our resolution of this appeal restrict in any way the powers of the multidistrict transferee judge, who remains free to define, to clarify, or to expand the scope of his pretrial order if he concludes that further discovery is appropriate.

### B. Refusal to Award Expenses

■ IIHS asks this court to go further, arguing that Firestone's motion to compel discovery was so baseless that the district court abused its discretion by failing to award IIHS the expenses it incurred in opposing the motion. Rule 37(a)(4) of the Federal Rules of Civil Procedure provides, in relevant part:

If the motion [to compel discovery] is denied, the court shall, after opportunity for hearing, require the moving party or the attorney advising the motion or both of them to pay to the party or deponent who opposed the motion the reasonable expenses incurred in opposing the motion, including attorney's fees, unless the court

finds that the making of the motion was substantially justified or that other circumstances make an award of expenses unjust.

Evaluation of the degree of justification of the party's motion, and of the circumstances rendering an award of expenses just or unjust, is committed to the sound discretion of the district court, which has a greater opportunity to observe and assess the character of the parties' litigating postures. See Marquis v. Chrysler Corp., 577 F.2d 624, 642 (9th Cir. 1978).

■ In denying IIHS' request for an award of expenses, the district court observed that "we think that is a kind of sanction that reflects on the good faith of counsel and we're not going to impugn counsel's good faith, at least in this case, by imposing such a sanction." J.A. 205–06. We do not interpret this oral statement of the court's views as reflecting an erroneous belief that bad faith is required before expenses can be awarded under rule 37(a)(4). Rather, in commenting on counsel's good faith in the proceeding, the district court recognized that the motion to compel discovery had not been devoid of justification. Given the subtlety of the legal issues presented by the prior orders in a multidistrict litigation context, we conclude that it was well within the district court's discretion to find the motion substantially justified.

### V. CONCLUSION

Multidistrict consolidation for pretrial proceedings has become an essential factor in the federal courts' ability to carry their increasing burden of complex litigation, while occasionally spawning procedural dilemmas of its own. Sensitive cooperation with the multidistrict transferee court is an obvious responsibility of the other district courts. But the transferee judge is not expected to anticipate every contingency that may arise, and his colleagues in other districts retain a measure of discretion to be exercised carefully in applying the master discovery plan to the facts presented by an individual witness.

We hold that the district court acted within its discretion in denying Firestone's motion to compel discovery, and in granting IIHS and its employees a protective order. We also hold that the district court did not abuse its discretion by refusing to award expenses against Firestone after denying a motion that had a substantial justification. The judgment of the district court is therefore

*Affirmed.*