756 F.2d 162
 244 U.S.App.D.C. 141, 12 O.S.H. Cas.(BNA) 1201,
1984-1985 O.S.H.D. ( 27,199
 INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE &
AGRICULTURAL IMPLEMENT WORKERS OF AMERICA, UAW, et
al., Petitioners,
v.
Raymond J. DONOVAN, Secretary of Labor, and Thorne G.
Auchter, Assistant Secretary of Occupational
Safety & Health Administration, Respondents,
Formaldehyde Institute, Intervenor.
 No. 85-1003.
 United States Court of Appeals,
District of Columbia Circuit.
 Submitted Jan. 4, 1985.
Decided March 5, 1985.
 
 Judith N. Macaluso, Attorney, Dept. of Labor, Arlington, Va., was on the response to the Motion to Compel Adherence to the District Court Order. Joseph E. diGenova, U.S. Atty., John D. Bates, Royce C. Lamberth and R. Craig Lawrence, Asst. U.S. Attys., Washington, D.C., entered appearances for respondents.
 Donald L. Morgan, Sara D. Schotland, Katherine L. Rhyne and W. Richard Bidstrup, Washington, D.C., were on the reply of intervenor. The Formaldehyde Institute, Inc., to the Motion to Compel Adherence to the District Court Order.
 Randy S. Rabinowitz, Washington, D.C., Stephen I. Schlossberg, Jordan Rossen and Ralph Jones, Detroit, Mich., were on the Motion to Compel Adherence to the District Court Order.
 Before EDWARDS, GINSBURG and SCALIA, Circuit Judges.
 Opinion for the Court by Circuit Judge HARRY T. EDWARDS.
 HARRY T. EDWARDS, Circuit Judge:
 
 
 1
 This case involves a challenge by the petitioners to the refusal of the Occupational Safety and Health Administration ("OSHA" or the "Agency") to regulate exposure to formaldehyde in the workplace, either by issuing an emergency temporary standard ("ETS") pursuant to section 6(c) of the Occupational Safety and Health Act ("OSH Act" or the "Act"),[1] or by taking other regulatory action pursuant to section 6(b) of the Act.[2]
 
 
 2
 In October of 1981, the United Auto Workers and thirteen other labor organizations petitioned OSHA to issue an ETS regarding workplace exposure to formaldehyde. The unions relied on evidence that formaldehyde may cause cancer in humans to request that the ETS limit exposure to the lowest feasible level and that employers be required to monitor exposure and to provide protective clothing, respirators and safety training to exposed employees. On January 29, 1982, OSHA denied the petition. Subsequently, the petitioners filed this suit in District Court, on the assumption that federal question jurisdiction existed under 28 U.S.C. Sec. 1331. They sought a declaration that OSHA's refusal was arbitrary and capricious and an order directing OSHA to issue an ETS immediately and to begin permanent rulemaking proceedings under section 6(b) of the Act. The District Court declined to compel the Agency to issue an ETS, but ordered OSHA to reconsider its refusal either to issue an ETS or to institute permanent rulemaking proceedings.[3] The District Court further ordered OSHA to develop a timetable for completing the reconsideration and directed the Agency to file periodic status reports.[4]
 
 
 3
 After the District Court's orders issued, this court decided Telecommunications Research & Action Center v. Federal Communications Commission ("TRAC ").[5] TRAC made clear for the first time that, where a statute commits final agency action to review by the court of appeals, the appellate court has exclusive jurisdiction to hear suits seeking relief that might affect its future statutory power of review.[6] Because section 6(f) of the OSH Act[7] vests jurisdiction in the court of appeals to review standards issued under section 6 of the Act, such as the regulation sought by the petitioners, it became apparent after TRAC that the District Court did not have subject matter jurisdiction over this case. Pursuant to our prescription in TRAC for such situations, the District Court transferred the case to this court under 28 U.S.C. Sec. 1631 (1982).
 
 
 4
 Currently before us is the petitioners' motion that we adopt the decision and orders of the District Court and supplement these with additional orders. In particular, the petitioners urge us to recognize the timetable for completing the reconsideration of formaldehyde which the Agency submitted to the District Court, and to require OSHA to adhere to that schedule without extension or amendment. The petitioners also ask us to require the Agency to file status reports with this court on the dates specified by the District Court.
 
 
 5
 As an initial matter, this case raises the novel question of the status of orders issued by the District Court prior to TRAC in a case that was subsequently transferred to the court of appeals. We hold that TRAC should not be applied retroactively to void otherwise valid orders issued by the District Court prior to transfer. Consequently, we will adopt and give full effect to the District Court's orders in this case. We expect the agency to adhere strictly to the timetable approved by the District Court and to file status reports on the appointed dates. At this time, we find it unnecessary to take any further action to compel the Agency to adhere to its timetable. However, because we believe that the petitioners have shown the Agency's actions to be unduly delayed and its explanations for delay to be questionable, we now order OSHA to inform this court immediately if it proposes to take any actions which might interfere with the projected schedule. Should the petitioners object to any proposed action, this court will accord expeditious treatment to their petitions for relief.
 
 A. Status of the District Court's Orders
 
 6
 We begin our analysis by considering the status of the District Court's orders.[8] In TRAC we established both that where a statute commits final agency action to review by courts of appeals, appellate courts have exclusive jurisdiction over suits seeking relief that might affect their future power of review, and that any such suits which had mistakenly been filed in the District Court should be transferred to the court of appeals. We did not address the question before us today, whether TRAC should be applied retroactively to void otherwise valid orders issued by the District Court before transferring a case to this court.
 
 
 7
 In Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,[9] the Supreme Court identified three considerations which bear on the issue of retroactivity: (1) "whether the holding in question 'decid[ed] an issue of first impression whose resolution was not clearly foreshadowed' by earlier cases," (2) " 'whether retrospective operation will further or retard [the] operation' of the holding in question," and (3) "whether retroactive application 'could produce substantial inequitable results' in individual cases."[10] After considering these criteria, the Marathon Court decided that its substantive holding--that the broad jurisdiction conferred upon bankruptcy judges by the Bankruptcy Act of 1978[11] violated Article III of the Constitution--should have only prospective effect.[12]
 
 
 8
 Applying the Marathon criteria to the instant case,[13] it becomes clear that "all of these considerations militate against the retroactive application of our holding"[14] in TRAC to void otherwise valid District Court orders. We find, first, that TRAC settled an issue whose resolution was not clearly foreshadowed by earlier cases. In TRAC we characterized the law as being in a "state of disarray," and specifically recognized that "our precedent concerning jurisdiction over interlocutory appeals from agency action (or inaction) is somewhat inconsistent and may be confusing for litigants attempting to select the proper forum for these claims."[15] Second, we find that retroactive application to void otherwise valid District Court orders will not further the purposes behind TRAC's jurisdictional holding. Third, we believe retroactive treatment would impose hardship, in the form of delay and uncertainty, on litigants who relied on our prior cases in taking their claims to District Court. This hardship is especially acute in cases such as the instant one, where human health is at stake, and in other cases where agencies have been held to have delayed unreasonably.
 
 
 9
 Consequently, we will adopt and give full effect to otherwise valid orders entered by the lower court prior to transfer in all cases governed by TRAC, which were improperly initiated in the District Court before TRAC issued. We will treat these orders essentially as being the law of the case,[16] and will reexamine them only for compelling reasons.[17]
 
 B. The Petitioners' Request for Relief
 
 10
 For the foregoing reasons, we adopt the District Court's orders in the present case. We accept the timetable submitted by OSHA to the District Court and direct the Agency to report to this court on the status of its reconsideration proceedings on the dates stipulated by the District Court.
 
 
 11
 We decline at this time to grant the petitioners' requests to compel OSHA to adhere to each remaining step in its timetable without extension or amendment. Although OSHA has requested and received three extensions from the District Court and this court, we accept the Agency's representation that it does not anticipate any further delay in completing its reconsideration. Mindful of past delays, however, we order OSHA to inform this court immediately of any proposed action which might interfere with the timetable. Furthermore, we caution the Agency that we, like the District Court, "will look with extreme displeasure on any variance from the schedule and will not hesitate to set a date certain for completion of the administrative proceedings if the [respondents] unreasonably delay."[18]
 
 
 12
 So ordered.
 
 
 
 [1]
 29 U.S.C. Sec. 655(c) (1982)
 
 
 [2]
 29 U.S.C. Sec. 655(b) (1982)
 
 
 [3]
 International Union, United Auto, Aerospace, & Agricultural Implement Workers v. Donovan, 590 F.Supp. 747 (D.D.C.1984)
 
 
 [4]
 International Union, United Auto, Aerospace, & Agricultural Implement Workers v. Donovan, No. 82-2401 (D.D.C. July 30 and Oct. 5, 1984) (orders)
 
 
 [5]
 750 F.2d 70 (D.C.Cir.1984)
 
 
 [6]
 Id. at 75
 
 
 [7]
 29 U.S.C. Sec. 655(f) (1982)
 
 
 [8]
 Although neither party has suggested that these orders are void, because they were issued by a court that was later determined to be without subject matter jurisdiction over the case, we are obliged to raise the question on our own motion. See, e.g., Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 702, 102 S.Ct. 2099, 2104, 72 L.Ed.2d 492 (1982) (consent of parties cannot remedy lack of subject matter jurisdiction); Schor v. Commodity Futures Trading Comm'n, 740 F.2d 1262, 1268-69 (D.C.Cir.1984)
 
 
 [9]
 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982) (plurality opinion)
 
 
 [10]
 Id. at 87-88, 102 S.Ct. at 2879-80 (citing Chevron Oil Co. v. Huson, 404 U.S. 97, 106-07, 92 S.Ct. 349, 355-56, 30 L.Ed.2d 296 (1971))
 
 
 [11]
 28 U.S.C. Sec. 1471(b) (Supp. IV 1980)
 
 
 [12]
 See also Buckley v. Valeo, 424 U.S. 1, 142, 96 S.Ct. 612, 693, 46 L.Ed.2d 659 (1976) (per curiam) (refusing to give holding retroactive effect); cf. Insurance Corp. of Ireland, 456 U.S. at 702 n. 9, 102 S.Ct. at 2104 n. 9 (noting that judgment based on want of subject matter jurisdiction may not be collaterally attacked); Chicot County Drainage Dist. v. Baxter State Bank, 308 U.S. 371, 376-77, 60 S.Ct. 317, 319-20, 84 L.Ed. 329 (1940) (same)
 
 
 [13]
 Like Marathon, this case presents the question of the legal effect of a court's actions where it is later determined that the court acted without jurisdiction
 
 
 [14]
 Marathon, 458 U.S. at 88, 102 S.Ct. at 2880
 
 
 [15]
 750 F.2d at 74-75 and n. 23 (listing inconsistent cases). Moreover, in a recent decision, Public Citizen Health Research Group v. Auchter, 702 F.2d 1150 (D.C.Cir.1983), we reviewed a District Court order directing OSHA to issue an ETS regulating workplace exposure to ethylene oxide; we ruled on the merits without noticing that the exercise of jurisdiction by the District Court was improper
 
 
 [16]
 The doctrine of the law of the case teaches that a decision on an issue of law made at one stage of a case becomes a binding precedent to be followed in successive stages of the same litigation. 1B J. MOORE, MOORE'S FEDERAL PRACTICE Sec. 0.404, at 117 (1984). While the most familiar application of the doctrine is to render appellate court decisions in a case binding on the courts of first instance, Professor Moore indicates that this doctrine has also been applied to cases transferred between courts of coordinate jurisdiction. He observes that the "utility of [the] transfer would be seriously compromised if the fact of transfer were to be treated as an invitation to seek a 'second opinion' on every pre-transfer ruling...." Id. Sec. 0.404[4-2], at 127. Because we should have been the court of original jurisdiction in TRAC transfer cases, our relationship with the District Court regarding these cases is analogous to that of two courts of coordinate jurisdiction; therefore we find Professor Moore's reasoning relevant to this situation
 
 
 [17]
 See, e.g., Laffey v. Northwest Airlines, Inc., 740 F.2d 1071, 1082-95 (D.C.Cir.1984), cert. denied, --- U.S. ----, 105 S.Ct. 939, 83 L.Ed.2d 951 (1985); In re Multi-Piece Rim Products Liability Litigation, 653 F.2d 671, 678 (D.C.Cir.1981); Laffey v. Northwest Airlines, Inc., 642 F.2d 578, 585 (D.C.Cir.1980). We have reexamined "the law of the case" "in light of changes in governing law, newly discovered evidence, or the manifest erroneousness of a prior ruling," In re Multi-Piece Rim Products, 653 F.2d at 678, and to correct clerical mistakes, to clarify the opinion or mandate, to remedy fraud upon the court, to avoid divergent results and to minister to similar aberrations. Laffey, 642 F.2d at 586
 
 
 [18]
 International Union, United Auto, Aerospace, & Agricultural Implement Workers v. Donovan, No. 82-2401 (D.D.C. Oct. 5, 1984) (order approving projected timetable and requiring status reports)