Peggy CHILDERS, Plaintiff,

v.

Rodney SLATER, Secretary
of Transportation,
Defendant.

No. CIV.A. 1997–853(RMU).

United States District Court,
District of Columbia.

Sept. 18, 2000.

Jeffrey Todd Green, Sidley & Austin, Washington, DC, Peggy Childers, Baltimore, MD, for plaintiff.

Suzanne Claire Nyland, Mary Lou Leary, Heather Jean Kelly, U.S. Attoney's Office, Washington, DC, for defendant.

## MEMORANDUM OPINION Granting the Plaintiff's Motion to Reopen Discovery Vacating in Part the Grant of Summary Judgment to the Defendant

URBINA, District Judge.

## I. INTRODUCTION

This Title VII matter comes before the court upon the plaintiff's motions for limited reopening of discovery and for limited reconsideration of the court's order granting partial summary judgment to the defendant. The plaintiff, Peggy Childers, is an African–American woman and a former employee of the Federal Aviation Administration ("FAA"), an agency within the United States Department of Transportation. In 1997, Ms. Childers filed a *pro se* action alleging race and sex discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e *et seq.* The defendant is Rodney Slater, Secretary of Transportation, named in his official capacity as head of the FAA.

For the reasons stated below, the court grants the plaintiff's motion for limited reopening of discovery and vacates in part the order which granted summary judgment to the defendant.

## II. BACKGROUND

Peggy Childers was employed by the FAA as a Communications Management Specialist. At the time her claims of discrimination and retaliation arose, Ms. Childers was the only AfricanAmerican woman in her division.[1] *See* Compl. ¶ 6(b). On April 25, 1997, after timely filing an Equal Employment Opportunity Commission charge and receiving a right-to-sue letter, Ms. Childers filed a *pro se* complaint in this court.[2]

Ms. Childers's complaint alleged more than twenty-six claims of race and sex discrimination and retaliation.[3] By Memorandum

---

1. The record does not reflect the number of employees in the division.

2. The court's Memorandum Opinion of March 23, 1999 sets forth the facts giving rise to Ms. Childers's complaint. *See Mem. Op.* at 2–3.

3. In an order dated June 12, 1998, the court dismissed the claims alleged in paragraphs 6(y) and (z) of the plaintiff's complaint.

Opinion dated March 23, 1999, the court concluded that Ms. Childers was entitled to proceed to trial on four of these claims: (1) retaliatory discipline through placement on a performance improvement plan; (2) retaliatory failure to promote in 1993; (3) retaliatory denial of permanent reassignment in 1994; and (4) discriminatory denial based on race of permanent assignment in 1994. *See generally* Mem. Op. With respect to the remaining claims, however, the court determined that Ms. Childers had failed to exhaust her administrative remedies, make a *prima facie* case, or carry her burden of proving that the employer's proffered reasons for its actions were pretextual. *See id.* at 5–9, 13.

On August 18, 1999, Ms. Childers filed a motion to proceed *in forma pauperis* ("IFP") and for appointment of counsel. *See generally* Pl.'s Mot. to Proceed IFP and for Appt. of Counsel. In support of her motion, Ms. Childers, who has been on disability since injuring her spine in 1995, stated that her current monthly "net income annuity" is $1,200.58, from which she pays a mortgage of $819.30 and approximately $170.00 for utilities. *See id.* at 2. In addition, prior to submitting her motion, Ms. Childers consulted with ten attorneys and three lawyer referral services, but did not succeed in finding anyone who would take her case on a contingency-fee basis. *See id.* at 2–5.

 The defendant opposed Ms. Childers's motion on the ground that her complaint lacked sufficient merit to warrant appointment of counsel. *See* Def.'s Response to Pl.'s Mot. to Proceed IFP and for Appt. of Counsel at 4. Indeed, the defendant informed the court that the plaintiff's remaining claims had "only *barely* survived summary judgment." *Id.* at 3 (emphasis added). The court evaluated the parties' arguments according to the scheme set out in *Poindexter v. FBI*, 737 F.2d 1173 (D.C.Cir.1984),[4] and concluded that Ms. Childers had made the requisite showing for appointment of counsel and IFP status. Accordingly, the court granted the plaintiff's motion and directed the court clerk to appoint counsel from the Civil Justice Act *pro bono* panel to represent the plaintiff. *See* Order dated August 31, 1999.

With the guidance of newly appointed counsel, the plaintiff filed two motions, the first for limited reopening of discovery, and the second for reconsideration of the court's finding that she had failed to exhaust her administrative remedies with respect to her claim that the defendant wrongfully denied her a promotion in 1994. Both motions implicitly seek to ameliorate difficulties that Ms. Childers encountered as an impecunious, *pro se* plaintiff. The court will consider each motion in turn.

## III. MOTION FOR LIMITED REOPENING OF DISCOVERY

### A. Legal Standard

 Federal trial courts enjoy wide discretion in handling pretrial discovery matters. *See United Presbyterian Church v. Reagan*, 738 F.2d 1375, 1382 (D.C.Cir.1984) (citing *In re Multi–Piece Rim Products Liability Litigation*, 653 F.2d 671, 679 (D.C.Cir. 1981)). Indeed, the D.C. Circuit will reverse discovery rulings only in those "unusual cases" where there has been a clear abuse of discretion. *See United Presbyterian Church*, 738 F.2d at 1382 (citing *Swanner v. United States*, 406 F.2d 716, 719 (5th Cir.1969)). Specifically, in the context of motions to reopen discovery, the courts of other circuits have held that "[w]hether to extend or reopen discovery is committed to the sound discretion of the trial court and its decision will not be overturned on appeal absent abuse of that discretion." *Smith v. United States*, 834 F.2d 166, 169 (10th Cir.1987); *see also United States v. Reliance Ins. Co.*, 799 F.2d 1382, 1387 (9th Cir.1986); *United States v. Schellong*, 717 F.2d 329, 336 (7th Cir.1983), *cert. den.*, 465 U.S. 1007, 104 S.Ct. 1002, 79 L.Ed.2d 234 (1984).

---

4. The *Poindexter* test directs courts to consider: "(1) the ability of the plaintiff to afford an attorney; (2) the merits of the plaintiff's case; (3) the efforts of the plaintiff to secure counsel; and (4) the capacity of the plaintiff to present the case adequately without aid of counsel." *Poindexter*, 737 F.2d at 1185.

## B. The Plaintiff is Entitled to Limited Reopening of Discovery

The plaintiff seeks to depose six individuals who "participated in or possess direct knowledge of the deicisions [sic] or actions that are the subject of Ms. Childers' surviving claims." Pl.'s Mot. for Limited Reopening of Discovery ("Mot. to Reopen") at 3.[5] The plaintiff states that she was unable to depose these individuals during the original discovery phase because as a *pro se* plaintiff, she lacked both the formal legal training and the necessary financial resources to obtain adequate discovery. *See id.* at 1–2, 3.

The defendant correctly points out that the plaintiff's motion comes more than twenty-eight months after the close of discovery and sixteen months after the court's ruling on the defendant's motion for summary judgment. *See* Def.'s Opp. to Pl.'s Mot. to Reopen, at 1. The defendant also alleges that the plaintiff scheduled and then canceled depositions with the same individuals she now seeks to depose. *See id.* at 2. In light of the delays and cancellations, the defendant argues, there are no extraordinary circumstances justifying relief from a discovery deadline that expired more than two years ago. *See id.* at 4.

■ Courts have identified several relevant factors in reviewing motions to reopen discovery: (1) whether trial is imminent; (2) whether the request is opposed; (3) whether the non-moving party would be prejudiced; (4) whether the moving party was diligent in obtaining discovery within the guidelines established by the court; (5) the foreseeability of the need for additional discovery in light of the time allotted by the district court; and (6) the likelihood that discovery will lead to relevant evidence. *See Smith*, 834 F.2d at 169 (citing *Howze v. Jones & Laughlin Steel Corp.*, 750 F.2d 1208, 1213 (3d Cir.1984)).

■ In weighing these factors, one overarching principle guides this court: that *pro se* litigants generally are entitled to wider latitude than those who are represented by counsel. *See, e.g., Alley v. Dodge Hotel*, 501 F.2d 880, 883 (D.C.Cir.1974), *cert. den.*, 431 U.S. 958, 97 S.Ct. 2684, 53 L.Ed.2d 277 (1977) (citing *Haines v. Kerner*, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972) (per curiam)). Indeed, the Supreme Court has stated that "*pro se* litigants are held to less stringent standards than those who are counseled by attorneys." *Haines*, 404 U.S. at 520, 92 S.Ct. 594. Federal appellate courts, including the D.C. Circuit, will go to "particular pains" to protect *pro se* litigants against the consequences of technical errors if injustice would otherwise result.[6] *See Beavers v. Lockhart*, 755 F.2d 657, 662 (8th Cir.1985) (addressing claim not raised in *pro se* petitioner's habeas motion); *see also Council v. Clemmer*, 165 F.2d 249, 250 (D.C.Cir.1947) (permitting *pro se* habeas petitioner to amend his petition).

With the foregoing principles in mind, and the factors set forth in *Smith v. United States*, the court turns to the merits of Ms. Childers's claim for limited reopening of discovery.

■ The defendant argues that it would be an "*undue* burden" to engage in a "second full round of discovery,"[7] stating that he has

---

5. These individuals are: Frank Corpening, David Lantzy, and Frank De Marco, all of whom were the plaintiff's immediate supervisors at times relevant to her claims; David Tuttle, the plaintiff's "second line" supervisor; Division Director Stan Rivers; and Special Assistant to the Associate Administrator Cal Fisher. *See* Pl.'s Mot. to Reopen at 2–3.

6. These principles resonate with even greater force in Title VII cases. As the D.C. Circuit has explained,

the legislative history [of Title VII] clearly indicates that Congress' overriding concerns were the hardship that litigation costs would impose on indigent plaintiffs and the need to minimize the impact of resource imbalances between

plaintiffs and defendants on the outcome of Title VII. These concerns are of course, implicated most seriously when a plaintiff cannot afford to hire counsel.
*Poindexter v. FBI*, 737 F.2d 1173, 1183 (D.C.Cir.) (footnote omitted) (explaining the legislative intent behind Title VII's attorney-appointment provision).

7. The plaintiff disputes the defendant's characterization of her request as one for a " 'second full round' of discovery ... that 'is not limited in any way.' " *See* Pl.'s Reply in Support of Mot. to Reopen at 3. The plaintiff states that her request for six additional depositions is "limited in scope, narrowly tailored to meet her need for trial preparation, and in all events, more than reasonable." *Id.* at 3–4.

already "engaged in extensive discovery, and [FAA's] employees and officials have spent countless hours addressing the claims herein." Def.'s Opp. to Pl.'s Mot. to Reopen, at 5 (emphasis added). The court is mindful of how time-consuming and financially onerous discovery can be. The fact that additional discovery will impose costs upon the defendants, however, does not necessarily mean that it would be *unduly* burdensome. This is particularly true since the additional depositions requested by the plaintiff are well within the parameters of the original discovery order. Specifically, when discovery first began, the court stated that each party was entitled to propound fifty interrogatories and conduct ten depositions. The plaintiff took two depositions, and now seeks to take six more. This total of eight depositions is still less than what the defendants were originally obliged to undergo. The court thus determines that additional discovery would not prejudice the defendant.[8]

▮ The defendant also argues that the plaintiff has not been diligent in obtaining discovery. *See* Def.'s Opp. to Mot. to Reopen at 2. While *pro se* status does not excuse dilatory tactics or undue delay, the court must evaluate the plaintiff's diligence in light of the fact that she was *pro se* and facing increasing financial difficulties throughout the period of discovery.[9] *Cf. Poindexter*, 737 F.2d at 1179 (district court granted *pro se* plaintiff's motion to extend discovery after determining that he was unemployed when discovery commenced, he had not received his unemployment checks, and financial limitations had made it "virtually impossible" for him to conduct discovery).

For example, the defendant states that Ms. Childers did not follow through on several depositions that she scheduled with the same individuals she now seeks to depose. *See* Def.'s Opp. to Pl.'s Mot. to Reopen, at 2. The plaintiff responds, however, that she noticed and canceled only *one* deposition, that of Frank Corpening, because she could not afford the services of a court reporter. *See* Childers Decl., dated Mot. to Reopen, Ex., ¶ 7.

Indeed, there is much in the record to suggest that under the circumstances the plaintiff *was* reasonably diligent in obtaining discovery. The defendant himself admits as much, stating that "[o]ver the course of litigation, the Defendant made more than a dozen supplemental disclosures in response to Plaintiff's interrogatory and document discovery requests." Def.'s Opp. to Pl.'s Mot. to Reopen, at 2. Moreover, unlike other cases the court has examined, there is nothing in the record to suggest that the plaintiff simply procrastinated until the end of the discovery period, and then requested an extension. *Cf. Covia Partnership v. River Parish Travel Ctr., Inc.*, 1993 WL 149687 (E.D.La.1993) (upholding magistrate judge's refusal to reopen discovery where plaintiff had delayed and was unable to complete discovery within the time allowed). Nor has the court granted the plaintiff numerous extensions for filing discovery, *see Ashjari v. NYNEX Corp.*, 1998 WL 699503, *2 (S.D.N.Y.1998) (denying motion to reopen discovery, because even though the plaintiff was *pro se*, the court had already given him numerous extensions for completing discovery).[10] In light of the fore-

---

8. In addition, the court notes that there is no trial date set in this matter. The parties are scheduled to appear before the court at a status hearing on September 18, 2000. The court *may* set a trial date at that time, but does not anticipate that any trial date will be imminent. Therefore, allowing additional time for discovery would not cause further delays with respect to trial.

9. Indeed, as a result of her continuing financial troubles, the plaintiff was discharged in bankruptcy on April 12, 2000, and lost her home to foreclosure on June 8, 2000. *See* Childer's Dec. at ¶ 3, 4.

10. At the initial status hearing on October 2, 1997, the court instructed the parties that discovery would close on January 30, 1998. The court record shows that the plaintiff, who was *pro se*, filed one joint motion to extend time for discovery (on February 13, 1998) and two motions to extend time for filing her response to the defendant's motion for summary judgment (March 27 and April 13, 1998).

The court must note that the defendant, who of course was not *pro se*, filed more requests for extensions than did the *pro se* plaintiff, specifically: a motion to extend time to serve its Rule 26(a)(2)(B) expert witness disclosures (January 16, 1998); a motion to extend time for conduct-

going facts, the court determines that the plaintiff was reasonably diligent in obtaining discovery.

■ In according latitude to *pro se* litigants, the court heeds an important admonition: "[o]rderly rules of procedure do not require sacrifice of the rules of fundamental justice." *Hormel v. Helvering,* 312 U.S. 552, 557, 61 S.Ct. 719, 85 L.Ed. 1037 (1941). The court believes that the plaintiff has presented persuasive arguments to support her petition for relief from a two-year old discovery deadline. The plaintiff litigated this case for two years without assistance of counsel or legal training, even while struggling with debt and failing health.

Accordingly, the court grants the plaintiff's motion for *limited* reopening of discovery for the purpose of deposing the six above-named individuals. The court will also allow any written discovery reasonably related to adequate preparation for these depositions.

## IV. MOTION FOR LIMITED RECONSIDERATION

### A. Legal Standard

■ The plaintiff seeks limited reconsideration of the court's March 23, 1999 order granting partial summary judgment to the defendant. An order granting partial summary judgment is interlocutory in nature. *See* FED. R. CIV. P. 56(c); *Citibank v. FDIC.,* 857 F.Supp. 976, 981 (D.D.C.1994) (citing *Liberty Mutual Ins. Co. v. Wetzel,* 424 U.S. 737, 744, 96 S.Ct. 1202, 47 L.Ed.2d 435 (1976)). Motions to reconsider interlocutory orders—in contrast to motions for reconsideration of final judgments—are within the discretion of the trial court, subject to appellate review under the abuse of discretion standard. *See United Mine Workers v. Pittston Co.,* 793 F.Supp. 339, 344–45 (D.D.C. 1992), *aff'd,* 984 F.2d 469 (D.C.Cir.), *cert.*

*den.,* 509 U.S. 924, 113 S.Ct. 3040, 125 L.Ed.2d 726 (1993). The Advisory Committee Notes to Rule 60(b) of the Federal Rules of Civil Procedure are consistent with this standard. As the Notes explain, "interlocutory judgments are not brought within the restrictions of [Rule 60(b)], but rather they are left subject to the complete power of the court rendering them to afford such relief from them as justice requires." FED. R.CIV.P. 60(b) Advisory Comm. Notes; *see also Schoen v. Washington Post,* 246 F.2d 670, 673 (D.C.Cir.1957) (Burger, J.) (so long as district court has jurisdiction over an action, it has complete power over interlocutory orders therein and may revise them when consonant with equity).

### B. The Court Inadvertently Granted the Defendant Summary Judgment on the Plaintiff's 1994 Failure–to–Promote Claim

■ The plaintiff correctly asserts that there is nothing in the Federal Rules that prevents the court from correcting an error underlying its own interlocutory order before the case is tried. *See* Pl.'s Reply at 2. Indeed, Rule 54(b) makes interlocutory orders "subject to revision at any time before the entry of judgment adjudicating all the claims ... of the parties." FED.R.CIV.P. 54(b). In contrast, by its plain language, Rule 60(b)'s more stringent standards do not apply to the plaintiff's motions. *See* FED.R.CIV.P. 60(b) ("On motion and upon such terms as are just, the court may relieve a party ... from a *final* judgment, order or proceeding") (emphasis added). Nor does Rule 59(e) preclude the court from considering the plaintiff's motion, which she filed sixteen months after the entry of judgment. *See* FED.R.CIV.P. 59(e) ("Any motion to alter or amend judgment

ing discovery (January 27, 1998); a joint motion to extend time for discovery (February 13, 1998); a motion to extend time to file its motion for summary judgment (February 17, 1998); a motion to continue the April 14, 1998 discovery conference (April 8, 1998); a motion to extend time to file a reply to the plaintiff's opposition to the defendant's motion for summary judgment (May 11, 1998); a motion to extend time to comply with the court's May 18, 1998 discovery

order (May 29, 1998); a motion to strike the plaintiff's opposition, or in the alternative, to extend the time within which to file a reply (June 3, 1998); and a motion to extend time to reply to the plaintiff's amended opposition to the defendant's motion for summary judgment (July 8, 1998). The court accommodated the defendant by granting all of these numerous requests and is inclined to treat the plaintiff with the same solicitude.

shall be filed no later than 10 days after entry of the judgment").

The plaintiff asks the court to set aside as erroneous its finding that she failed to exhaust her administrative remedies with respect to the claim that the defendant wrongfully denied her a promotion in 1994. *See generally* Pl.'s Mot. for Reconsid. Specifically, the plaintiff claims that the court erroneously granted summary judgment to the defendant with respect to all of the allegations of discrimination and reprisal in paragraph 6(p) of her complaint (that is, failure to promote in 1994, 1995, and 1996), when in fact the defendant had contested only the 1995 and 1996 claims. *See id.* at 3–4. Rather than challenge the plaintiff's assertion that it did not request summary judgment on the 1994 claim, the defendant devotes much of its opposition to arguing the merits of whether the plaintiff actually exhausted her administrative remedies. *See id.* at 2–5.

The court agrees that it erroneously included the 1994 failure-to-promote claim in its grant of summary judgment to the defendant.[11] Accordingly, the court will vacate that part of its order which granted summary judgment to the defendant on the 1994 failure-to-promote claim contained within paragraph 6(p) of the plaintiff's complaint. The court will permit the defendant to file a motion to dismiss this claim.

## V. CONCLUSION

For the reasons set forth above, the court will grant the plaintiff's motion for limited reopening of discovery. The court also will vacate the portion of its March 23, 1999 Opinion which granted summary judgment to the defendant on the 1994 failure-to-promote claim. Should the defendant wish to file a motion to dismiss this claim, the court will provide the parties with a briefing schedule

for the filing of motions and responses. An appropriate order directing the parties in a manner consistent with this Memorandum Opinion is separately and contemporaneously executed and issued this _____ day of September 2000.

**SO ORDERED.**

---

11. The relevant passage of the defendant's brief stated: "Plaintiff could attempt to argue that her failure to promote claim applies to 1994, 1995 and 1996, however these claims, if advanced must also fail. *Plaintiff's claims about a failure to promote in 1995 and 1996 were never raised with a counselor.*" Def.'s Mot. for Summ. J. at 14–15 (citing Aff. of Harold LeBlanc ¶ 6) (emphasis added). In its Memorandum Opinion, the court concluded:

the plaintiff failed to timely allege and administratively exhaust her remedies with respect to the allegations of discrimination and reprisal in paragraph 6(p) of the complaint insofar as they embody the failure to promote the plaintiff after 1993. Accordingly, the defendant's motion for summary judgment will be granted with respect to claims alleging non-promotion in 1994, 1995 and/or 1996.

Mem. Op. at 6.