## PREMIUM SERVICE CORPORATION, Plaintiff-Appellant,

v.

## The SPERRY & HUTCHINSON COMPANY, Defendant, George A. Scott, Appellee.

### No. 73–2217.

United States Court of Appeals, Ninth Circuit.

Feb. 6, 1975.

---

John Bodner, Jr. (argued), Howrey, Simon, Baker & Murchison, Washington, D. C., for plaintiff-appellant.

Michael L. Kirby (argued), Luce, Forward, Hamilton & Scripps, San Diego, Cal., for appellee.

Alan R. Wentzel (argued), Casey, Lane & Mittendorf, New York City, for defendant.

Before KOELSCH and CHOY, Circuit Judges, and MARKEY,* United States Court of Customs and Patent Appeals.

## OPINION

CHOY, Circuit Judge:

Premium Service Corporation is engaged in antitrust litigation against the Sperry & Hutchinson Company (S&H) in the United States District Court for the District of Minnesota. S&H is charged with unlawfully monopolizing and attempting to monopolize segments of the trading stamp market. Premium Service is attempting to show that, as part of this alleged scheme, S&H has offered one of its customers, Walker-Scott Corporation, millions of dollars in tie-in loans and other inducements. Walker-Scott operates a chain of department stores in Southern California. As part of its pre-trial discovery for the Minnesota litigation, Premium Service served a subpoena duces tecum on George A. Scott in San Diego, requiring production of documents pertaining to dealings between Walker-Scott and S&H. Scott is Chairman of the Board of Walker-Scott.

Scott submitted a motion to quash the subpoena to the district court for the Southern District of California. The court granted the motion in part, denying Premium Service's demands for documents showing all payments from S&H to Walker-Scott, showing purchases of equity interests in Walker-Scott by S&H, and, very broadly, relating "in any way, to any dealing, transaction, agreement or understanding" between the parties. The court also quashed Premium Service's subpoena of federal and state tax returns filed by Walker-Scott and by Scott as an individual from 1955 to 1972. The court further ordered that none of the documents which had been subpoenaed should be destroyed by Scott or by Walker-Scott. Premium Service appeals. We affirm.

### Jurisdiction on Appeal

Scott argues at the outset that this court lacks jurisdiction over the appeal. We reject this contention. Our jurisdiction derives from 28 U.S.C. § 1291: "The courts of appeals shall have jurisdiction of appeals from all final decisions of the district courts of the United States . . . except where a direct review may be had in the Supreme Court." Scott asserts that the district court's order in this case is not a "final" decision. The Supreme Court has held that there exist marginal cases falling within a "twilight zone" of finality; whether orders emanating from this zone are appealable must be determined by balancing the "inconvenience and costs of piecemeal review" against "the danger of denying justice by delay." Gillespie v. United States Steel Corp., 379 U.S. 148, 152–53, 85 S.Ct. 308, 311, 13 L.Ed.2d 199 (1964). *See generally* Comment, Requiem for the Final Judgment Rule, 45 Texas L.Rev. 292 (1966).

---

* Honorable Howard T. Markey, Chief Judge, U.S. Court of Customs and Patent Appeals, sitting by designation.

█ Even before announcing its expansive holding in *Gillespie,* the Court had firmly established the "collateral order rule" in Cohen v. Beneficial Industrial Loan Corp., 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). In *Cohen,* the Court held that an order denying a motion to require the plaintiff to post security in a stockholder's derivative action was appealable under section 1291. The language in *Cohen* is susceptible to codification in such a way as to produce a detailed test for finality. *See, e. g.,* the three-prong test constructed by United States v. Cefaratti, 202 F.2d 13, 16 (D.C.Cir. 1952), cert. denied, 345 U.S. 907, 73 S.Ct. 646, 97 L.Ed. 1343 (1953). Regardless of how its holding is restated, however, the Court in *Cohen* applied common sense to the statutory language. Congress limited our jurisdiction to review of "final decisions" not in order to deny appeal arbitrarily to some parties on some issues, but to enable all stages of litigation to be reviewed in one proceeding. 337 U.S. at 546, 69 S.Ct. 1221. If the district court has said its last word on an issue, and if its decision is of a nature that it will not be subject to review on appeal from the final judgment of the main proceeding, then the courts will not suppose Congress to have precluded immediate appeal of that decision. *Cohen* suggested that immediate appeal is particularly warranted when delay would render an appeal meaningless.

In the case before us, if the district court had denied Scott's motion to quash,

Scott could have obtained review by electing to ignore the subpoena and appeal from the ensuing contempt citation. We would, therefore, lack jurisdiction to review the order denying the motion to quash. United States v. Ryan, 402 U.S. 530, 91 S.Ct. 1580, 29 L.Ed.2d 85 (1971); Cobbledick v. United States, 309 U.S. 323, 60 S.Ct. 299, 84 L.Ed. 783 (1940).[1] Or, if the court granting Scott's motion had been the same court in which the main action was being litigated, Premium Service could have sought review of the order when it appealed from the final judgment. Again, the order would lack finality. Louie v. Carnevale, 443 F.2d 912 (9th Cir. 1971). But these avenues for appeal are absent where a California district court grants a motion to quash a subpoena relating to litigation pending in a Minnesota court. The Minnesota court has no jurisdiction over Scott, and so Premium Service cannot challenge the California order when it appeals from the Minnesota final judgment. Nor will the California court conduct any further enforcement proceeding resulting in a "final" adjudication from which Premium Service could appeal. Congressional desire to avoid piecemeal appeal does not dictate that we foreclose Premium Service from all effective appellate review of an order having a potentially important impact on its conduct of the Minnesota litigation. Although the question is one of first impression in this circuit,[2] the logic of *Cohen* and the unanimous opinion of those courts in other circuits which have confronted the

---

1. We do not decide whether Scott would be limited to this relief even though not a party to the main action. The Tenth Circuit held in Covey Oil Co. v. Continental Oil Co., 340 F.2d 993 (10th Cir.), cert. denied 380 U.S. 964, 85 S.Ct. 1110, 14 L.Ed.2d 155 (1965), that an order denying a non-party's motion to quash would be appealable under some circumstances. *Covey* has been rejected explicitly in other circuits. Borden Co. v. Sylk, 410 F.2d 843 (3rd Cir. 1969); United States v. Anderson, 464 F.2d 1390 (D.C.Cir. 1972); United States v. Fried, 386 F.2d 691 (2d Cir. 1967). Whatever validity *Covey* may have in this circuit is limited to civil cases. *See* United States v. Ryan, 402 U.S. 530, 533, 91 S.Ct. 1580, 29 L.Ed.2d 85 (1971).

2. Martin v. Chandis Securities Co., 128 F.2d 731 (9th Cir. 1942), cited by Premium Service, does not control our decision in this case. In *Martin,* an Internal Revenue agent secured an ex parte court order for the production of the taxpayer's books and records. The court later quashed its order, and we held that its order to quash was a "final" order from which we could hear an appeal. *Martin* belongs to a distinct line of decisions upholding the appealability of orders relating to subpoenas issued in aid of administrative proceedings. Reisman v. Caplin, 375 U.S. 440, 449, 84 S.Ct. 508, 11 L.Ed.2d 459 (1964) (citing *Martin*); D. I. Operating Co. v. United States, 321 F.2d 586, 587 (9th Cir. 1963); Wilmot v. Doyle, 403 F.2d 811, 814 n. 5 (9th Cir. 1968).

issue prompt us to conclude that we have jurisdiction over this appeal.[3]

### Abuse of Discretion

A district court may quash a subpoena duces tecum, the results of which if finds "unreasonable and oppressive." Fed.R.Civ.P. 45(b). We will reverse such an order to quash only for abuse of discretion. Fifth Avenue Peace Parade Comm. v. Gray, 480 F.2d 326 (2d Cir. 1973), cert. denied, 415 U.S. 948, 94 S.Ct. 1469, 39 L.Ed.2d 563 (1974); Baker v. F & F Investment, 470 F.2d 778 (2d Cir. 1972), cert. denied, 411 U.S. 966, 93 S.Ct. 2147, 36 L.Ed.2d 686 (1973); Brown v. Thompson, 430 F.2d 1214 (5th Cir. 1970); Swanner v. United States, 406 F.2d 716 (5th Cir. 1969).[4] Such abuses must be unusual and exceptional; we will not merely substitute our judgment for that of the trial judge. *Brown, supra,* 430 F.2d at 1216. A judge abuses his discretion only when his decision is based on an erroneous conclusion of law or where the record contains no evidence on which he rationally could have based that decision. *Cf.* Song Jook Suh v. Rosenberg, 437 F.2d 1098 (9th Cir. 1971).

We find no such abuse in this case. Premium Service's requests for documents were sweeping in nature, covering every paper touching on any relationship between S&H and Walker-Scott or Scott personally. Compliance would have required extensive sifting and analysis by Walker-Scott employees. Premium Service's offer to do the sifting itself was unrealistic, as the court recognized; no company, having a choice, would permit another company to go on a fishing expedition through its records. The district court could reasonably have found, without abusing its discretion, that Premium Service's need for these documents was not sufficient to outweigh the burden and invasion of corporate privacy which would have resulted to Scott and Walker-Scott, especially since they were not parties to the suit. *See* Hecht v. Pro-Football, Inc., 46 F.R.D. 605 (D.D.C. 1969).

Premium Service also subpoenaed Scott's tax returns. Tax returns do not enjoy an absolute privilege from discovery. St. Regis Paper Co. v. United States, 368 U.S. 208, 219, 82 S.Ct. 289, 7 L.Ed.2d 240 (1961); Trans World Airlines, Inc. v. Hughes, 29 F.R.D. 523 (S.D. N.Y.1961), aff'd, 332 F.2d 602 (2d Cir. 1964), cert. dismissed, 380 U.S. 249, 85 S.Ct. 934, 13 L.Ed.2d 818 (1965). Nevertheless, a public policy against unnecessary public disclosure arises from the need, if the tax laws are to function properly, to encourage taxpayers to file complete and accurate returns. Federal Savings & Loan Ins. Corp. v. Krueger, 55 F.R.D. 512 (N.D.Ill.1972); Wiesenberger v. W. E. Hutton & Co., 35 F.R.D. 556 (S.D.N.Y.1964); *cf.* 26 U.S.C. §§ 6103, 7213(a). The district court, under the circumstances of this case, could reasonably have based its order to quash the subpoena of tax returns on the primacy of this policy.[5]

Affirmed.

---

3. Republic Gear Co. v. Borg-Warner Corp., 381 F.2d 551 (2d Cir. 1967); Westinghouse Electric Corp. v. City of Burlington, 351 F.2d 762 (D.C.Cir. 1965); Ochsner v. Millis, 382 F.2d 618 (6th Cir. 1967); Carter Products, Inc. v. Eversharp, Inc., 360 F.2d 868 (7th Cir. 1966); Horizons Titanium Corp. v. Norton Co., 290 F.2d 421 (1st Cir. 1961). The only decision to deny appeal under these circumstances has been Palmer v. Fisher, 228 F.2d 603 (7th Cir. 1955), cert. denied, 351 U.S. 965, 76 S.Ct. 1030, 100 L.Ed. 1485 (1956). *Palmer's* reasoning was questioned in *Horizons Titanium,* and the decision was overruled by the Seventh Circuit in *Carter Products.*

4. Our use of the clearly erroneous test, based on Fed.R.Civ.P. 52(a), in Goodman v. United States, 369 F.2d 166 (9th Cir. 1966), resulted in our examining substantially the same considerations and arriving at the same result.

5. Westinghouse Electric Corp. v. City of Burlington, 351 F.2d 762 (D.C.Cir. 1965), superficially appears contrary to our decision. That decision may be distinguished by the district court's erroneous reliance on the Government's "informer privilege" and the paucity of the Government's showing that the subpoenas were unreasonable and oppressive.