**HEAT & CONTROL, INC., Appellant,**

v.

**HESTER INDUSTRIES, INC., Appellee.**

**Appeal No. 85–2553.**

United States Court of Appeals,
Federal Circuit.

March 4, 1986.

Debra E. Dahl and Elmer Albritton,
Flehr, Hohbach, Test, Albritton & Herbert,

San Francisco, Cal., argued, for appellant. With them on brief, was Donald N. MacIntosh.

Lawrence R. Brown, Arlington, Va., argued, for appellee. With him on brief, was Oscar M. Bean, Bean & Bean, Moorefield, W.Va.

Before MARKEY, Chief Judge, FRIEDMAN, Circuit Judge, and MILLER, Senior Circuit Judge.

JACK R. MILLER, Senior Circuit Judge.

This is an appeal by Heat & Control, Inc. from a May 22, 1985, order of the United States District Court for the Northern District of West Virginia,[1] quashing a deposition subpoena issued by the same court on February 8, 1985. We vacate the order and remand the case to the district court for further proceedings.

## BACKGROUND

Heat & Control's patents relate to an apparatus (a convection oven termed a "counterflow oven" ("CFO") by the parties) and method for cooking solid food products in circulating steam.[2]

Hester Industries, Inc. ("Hester") is a small corporation in Moorefield, West Virginia (within the jurisdiction of the Northern District of West Virginia), which commercially processes chickens. The processing includes cooking and freezing. Stein Associates, Inc. ("Stein") manufactures and sells CFOs.

When Heat & Control's oven and process inventions were being developed in 1972–73, an employee, Loew, was privy to information concerning the design, construction, and operation of Heat & Control's oven. Loew's employment was subsequently terminated, and he thereafter formed a company which manufactured ovens for commercial use. Hester contracted with Loew to manufacture, at its request, steam-circulating ovens. However, before they were

manufactured, Loew's business went bankrupt. Hester then contracted with Stein, who purchased the assets of Loew's company (including the drawings and designs for the Hester oven), to construct the oven designed by Loew. In 1982, Stein manufactured two CFOs, which were delivered and installed at Hester's plant. Both allegedly infringe Heat & Control's patents.

Stein filed a declaratory judgment action against Heat & Control in the United States District Court at Toledo, Ohio. Heat & Control counterclaimed for infringement, and the action was later transferred to the United States District Court at San Francisco, where it is now pending. Stein seeks, *inter alia*, to have declared invalid Heat & Control's patents. A preliminary skirmish in the form of an appeal taken by Stein from an interlocutory order of the California District Court, denying Stein's motion for a preliminary injunction, is reported at 748 F.2d 653, 223 USPQ 1277 (Fed.Cir.1984).

Heat & Control sought discovery, in the United States District Court in West Virginia, from Hester concerning the operation of the CFOs it purchased from Stein. In February, 1985, Heat & Control was issued a subpoena by the district court for deposition of Hester's officers and production of documents related to the allegedly infringing ovens.

Hester filed a motion to quash and both in its memorandum in support and at the hearing on the motion, argued that (1) the information sought constitutes proprietary trade secrets, the disclosure of which would seriously harm its business and (2) that the information sought was more conveniently available from other sources. Hester moved and argued in the alternative for a protective order under Fed.R.Civ.P. 26(c). Heat & Control opposed the motion to quash the subpoena, asserting that discovery was relevant and necessary to the main (infringement) suit pending in California, because Heat & Control needed to

---

**1.** *Stein Associates, Inc. v. Heat & Control, Inc.,* No. Misc. 85–313–E (N.D.W.Va.1985).

**2.** Patent Nos. 3,947,241, issued March 30, 1976, and 4,167,585, issued September 11, 1979, both to Caridis and Benson.

know the operating conditions in order to determine whether they fall within the Heat & Control patent claims and to assess damages if the ovens infringe. Counsel for Heat & Control also suggested to the court the issuance of a protective order.

The hearing on the motion to quash was held by a conference call on May 3, 1985. After the parties had argued, the court concluded the hearing by vacating the subpoena. The court stated that, on a matter ancillary to the main litigation in another forum, it should be hesitant to decide what constitutes relevant evidence under Fed.R. Civ.P. 26(b)(1). It analyzed Fed.R.Civ.P. 26(b)(1), as amended in 1983, and concluded that the rule requires that "use of discovery methods ... be limited by the court if it determines the discovery is obtainable from some other source that is more convenient and less expensive and less burdensome." Although the court recognized the possibility of granting a protective order under which discovery could proceed, as an alternative to the grant of the motion to quash, it did not fully explore that possibility.

In its order to quash, the court stated that the information sought by discovery could be obtained from other sources more conveniently, less burdensomely, and less expensively; that the deposition posed a serious threat to the "processes" of Hester; and that Hester had shown good cause to have the subpoena vacated.

## ANALYSIS

### A. Jurisdiction and Appealability

■ The jurisdiction of the West Virginia district court is based on 28 U.S.C. § 1338. Subject matter jurisdiction in this court under 28 U.S.C. § 1295(a)(1) is not contested by the parties. However, generally an appellate court lacks jurisdiction to review an order granting a motion to quash a subpoena, because the order would be reviewable for error after final judgment on the merits.

Title 28 United States Code, section 1295 (with pertinent language identical to that found in 28 U.S.C. § 1291 covering appeals from the geographical circuits), provides that "[t]he United States Court of Appeals for the Federal Circuit shall have exclusive jurisdiction—(1) of an appeal from a *final* decision of a district court" in a case involving a patent (emphasis supplied). *Panduit Corp. v. All States Plastic Co.*, 744 F.2d 1564, 1571, 223 USPQ 465, 468 (Fed.Cir. 1984). *Cf. Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 546–47, 69 S.Ct. 1221, 1225–26, 93 L.Ed. 1528 (1949) (addressing the "final" language in section 1291). This "final order rule" reflects "a strong congressional policy against piecemeal reviews and against obstructing or impeding an ongoing judicial proceeding by interlocutory appeals." *United States v. Nixon*, 418 U.S. 683, 690, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974) (citations omitted). However, it is well established that some orders, which do not terminate the underlying litigation, are appealable as a collateral order "exception" to the finality requirement, *Richardson-Merrell, Inc. v. Koller*, — U.S. ——, 105 S.Ct. 2757, 2761, 86 L.Ed.2d 340 (1985); *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 468, 98 S.Ct. 2454, 2457, 57 L.Ed.2d 351 (1978); *Panduit Corp.*, 744 F.2d at 1571–72, 223 USPQ at 469, because they are final in effect.

■ Appealability of orders is not decided by rote. *Horizons Titanium Corp. v. Norton Co.*, 290 F.2d 421, 423 (1st Cir. 1961). To determine appealability of an order, an appellate court must balance the "'inconvenience and costs of piecemeal review' against 'the danger of denying justice by delay.'" *Premium Service Corp. v. Sperry & Hutchinson Co.*, 511 F.2d 225, 227 (9th Cir.1975), *citing Gillespie v. United States Steel Corp.*, 379 U.S. 148, 152–53, 85 S.Ct. 308, 311, 13 L.Ed.2d 199 (1964). *See Richardson-Merrell, Inc.*, 105 S.Ct. at 2763. The Court in *Cohen* first set forth the three-part test for determining whether an order is final enough to be appealable:

[T]he order must [1] conclusively determine the disputed question, [2] resolve an important issue completely separate from the merits of the action, and [3] be

effectively unreviewable on appeal from a final judgment.

*Coopers & Lybrand,* 437 U.S. at 468, 98 S.Ct. at 2458 (footnote omitted). *See Baker Perkins, Inc. v. Werner & Pfleiderer Corp.,* 710 F.2d 1561, 1564, 218 USPQ 577, 578–79 (Fed.Cir.1983).[3] Heat & Control's appeal meets the first two of the criteria because the district court determined a discovery issue concerning a nonparty to the infringement and validity suit in a proceeding ancillary to the main action in a different jurisdiction. Thus, the question here is "whether the party unsuccessfully seeking the subpoena has any other means of obtaining review." *Horizons Titanium Corp.,* 290 F.2d at 424 (citation omitted).

■ A discovery order incident to a pending action is ordinarily not subject to appeal, and an order quashing a subpoena is typically not a final judgment. *Ariel v. Jones,* 693 F.2d 1058, 1059 (11th Cir.1982). If the district court granting Hester's motion to quash were the same court in which the main action is being litigated, Heat & Control could seek review, as an error of the court, when and if it appeals from the final judgment. However, such a review is unavailable in this case, where the West Virginia district court has granted a motion to quash a subpoena relating to litigation pending in the California district court, which has no jurisdiction over Hester. Absent the California district court's jurisdiction over Hester, Heat & Control cannot effectively challenge the West Virginia district court's action on appeal from the California district court's final judgment.

Thus, the order quashing the subpoena entered by the West Virginia district court appears to meet all three criteria for finality and is, therefore, appealable. *See Northrop Corp. v. McDonnell Douglas Corp.,* 751 F.2d 395, 399 n. 5 (D.C.Cir.1984); *CF & I Steel Corp. v. Mitsui & Co. (U.S.A.), Inc.,* 713 F.2d 494, 496 (9th Cir.1983); *Ariel,* 693 F.2d at 1059; 9 Moore's Federal Practice ¶ 110.13[2], and cases cited. The jurisdictional question comes down to whether this judicially-created test or 28 U.S.C. § 1295 may be construed differently because the Federal Circuit is the same appellate court that would have jurisdiction over an appeal on the merits from the California district court.

■ Prior to creation of the Federal Circuit, an order by the West Virginia district court quashing a subpoena for discovery would have been appealable to the Fourth Circuit, as is now the procedure where the order is not related to a patent infringement case. Because such an order is appealable as a final disposition of the only proceeding in the ancillary court, we are satisfied that it does not matter that the Federal Circuit is the same appellate court that would possess jurisdiction over an appeal from the California district court's final action on the merits. The California court has no jurisdiction over Hester, a nonparty to the main infringement action, and Heat & Control has no other means of effectively obtaining review than by appealing the West Virginia court's order, necessarily to this court. Thus, the West

---

**3.** The First Circuit has recently interpreted *Cohen* to mandate a fourth criterion for appealability: that the order "must present a serious and unsettled question." *In re San Juan Star Co.,* 662 F.2d 108, 112 (1st Cir.1981), *citing In re Continental Investment Corp.,* 637 F.2d 1, 4 (1st Cir.1980); and *United States v. Sorren,* 605 F.2d 1211, 1213 (1st Cir.1979). (An earlier First Circuit case, *Horizons Titanium Corp.,* 290 F.2d at 423–24, did not explicitly require the "fourth" *Cohen* criterion.) We note that the Supreme Court and a majority of the circuits that have spoken on this issue define the test for finality of an interlocutory appeal as having only three criteria. *E.g., Richardson-Merrell, Inc.,* 105 S.Ct. at 2761; *Cheng v. GAF Corp.,* 713 F.2d 886, 888

(2d Cir.1983); *National Life Ins. Co. v. Hartford Accident & Indem. Co.,* 615 F.2d 595, 597 (3d Cir.1980); *Ochsner v. Millis,* 382 F.2d 618, 620–22 (6th Cir.1967); *Freeman v. Chicago Musical Instrument Co.,* 689 F.2d 715, 717–18 (7th Cir. 1982); *Premium Serv. Corp.,* 511 F.2d at 228; *Tenneco Resins, Inc. v. Reeves Bros., Inc.,* 736 F.2d 1508, 1510, 222 USPQ 276, 278 (Fed.Cir. 1984). *See Covey Oil Co. v. Continental Oil Co.,* 340 F.2d 993, 996 (10th Cir.), *cert. denied,* 380 U.S. 964, 85 S.Ct. 1110, 14 L.Ed.2d 155 (1965); *Ariel v. Jones,* 693 F.2d 1058, 1059 (11th Cir. 1982). The "serious and unsettled question" may be subsumed within the second criterion listed above. 9 Moore's Federal Practice ¶ 110.-10 (2d ed. 1985).

Virginia court's order is appealable, and this court possesses jurisdiction to hear it.

### B. *Propriety of the Order Quashing Subpoena* [4]

#### 1. Standard of review

■ Hester argues (and Heat & Control controverts) that Heat & Control has the burden of proving that "clearly erroneous" findings of fact leading to the judgment were made "leaving this Honorable Tribunal with the definite and firm conviction that a mistake has been committed." In support, Hester cites this court's opinion in *Raytheon Co. v. Roper Corp.*, 724 F.2d 951, 220 USPQ 592 (Fed.Cir.1983), *cert. denied,* — U.S. —, 105 S.Ct. 127, 83 L.Ed.2d 69 (1984). The standard enunciated in that case was with reference to appellate review over factual findings of the district court, not the standard of review over the exercise of judicial discretion, and, thus, is inapplicable to this case. We do not agree with Hester that "clearly erroneous" correctly defines Heat & Control's burden on appeal.[5] We agree with the circuits, including the Fourth, which define the standard of review of a district court's decision in a discovery matter, including an order to quash a subpoena, as whether the court abused its discretion. *See Taylor v. Weinberger,* 528 F.2d 1153, 1156 (4th Cir. 1975). *E.g., Northrop Corp.,* 751 F.2d at 399; *Deitchman v. E.R. Squibb & Sons, Inc.,* 740 F.2d 556, 563 (7th Cir.1984); *Dart Industries Co. v. Westwood Chemical Co.,* 649 F.2d 646, 648 (9th Cir.1980), *citing Premium Service Corp.,* 511 F.2d at 229;

*Covey Oil Co. v. Continental Oil Co.,* 340 F.2d 993, 999 (10th Cir.), *cert. denied,* 380 U.S. 964, 85 S.Ct. 1110, 14 L.Ed.2d 155 (1965); *Ariel,* 693 F.2d at 1060.

■ An abuse of discretion occurs when (1) the court's decision is "clearly unreasonable, arbitrary or fanciful" (*Northrop Corp.,* 751 F.2d at 399); (2) the decision is based on an erroneous conclusion of law (*Ariel,* 693 F.2d at 1060, *citing Premium Service Corp.,* 511 F.2d at 229); (3) the court's findings are clearly erroneous (*Deitchman,* 740 F.2d at 564); or (4) the record contains no evidence on which the district court rationally could have based its decision (*e.g., Ariel,* 693 F.2d at 1060). However, "[t]he phrase [abuse of discretion] means ... that the court has a range of choice, and that its decision will not be disturbed as long as it stays within that range and is not influenced by any mistake of law." *Kern v. TXO Production Corp.,* 738 F.2d 968, 970 (8th Cir.1984); *Dart Industries, Inc.,* 649 F.2d at 648, *citing Premium Service Corp.,* 511 F.2d at 229. The court in *Premium* noted the hesitancy with which reviewing courts should address a matter left to the discretion of the district court: "Such abuses must be unusual and exceptional; we will not merely substitute our judgment for that of the trial judge." 511 F.2d at 229 (citation omitted).

#### 2. The District Court's Order

The Order of the district court stated, *inter alia,*

how it would decide those questions were they before that court. 744 F.2d at 1575, 223 USPQ at 472.

---

**4.** On questions relating solely to procedural matters, such as this, that do not directly address issues of patent law, the Federal Circuit has consistently held that the policies promoting certainty in the law and *stare decisis* mandate that the court follow the law of the regional circuit. *Panduit Corp.,* 744 F.2d at 1573, 223 USPQ at 470; *In re International Medical Prosthetics Research Assocs., Inc.,* 739 F.2d 618, 620 (Fed.Cir.1984). Thus, we will observe Fourth Circuit law to the extent that it provides guidance on the issues. To do otherwise would be "contrary to the ... goal of the federal judicial system to minimize confusion and conflicts." *Panduit Corp.,* 744 F.2d at 1573, 223 USPQ at 470. With respect to the issues on which the Fourth Circuit has not spoken, we must predict

**5.** We have found few cases that so define an appellant's burden for overturning a district court's decision on a discovery matter. *E.g., Horizons Titanium Corp.,* 290 F.2d 421; *Goodman v. United States,* 369 F.2d 166 (9th Cir. 1966). However, *Goodman* was effectively overruled in a later opinion from the same court, *Premium Serv. Corp.,* 511 F.2d 225 (the standard applied was "abuse of discretion" *id.* at 229 n. 4), and *Horizons Titanium Corp.* is the minority view on this issue.

1. That the discovery sought by the defendant of Hester Industries, Inc., can be obtained from other sources that are more convenient, less burdensome and less expensive;

2. That the deposition poses a serious threat to the processes of Hester Industries, Inc.;

3. That good cause has therefore been shown by Hester Industries, Inc., for the vacating of said subpoena;

4. That the subpoena to depose Hester Industries, Inc., which is dated February 8, 1985, and which was served on Hester Industries, Inc., on February 14, 1985, is hereby vacated and Hester Industries, Inc., shall not be required to submit to said deposition.

During the hearing on Hester's motion, the court stated that it, as a court ancillary to another in which the main action was progressing, should be "especially hesitant" in determining what constitutes relevant evidence under Fed.R.Civ.P. 26(b)(1)[6] in light of the 1983 amendment to the rule.[7] The court recognized that it must balance the inconvenience and costs of piecemeal review against the danger of denying justice by delay and concluded that other sources of the information possessed by Hester "would be not only more convenient for the discovery process, but would be less burdensome for all of the parties and would certainly be much less expensive for all of the parties." Also, it emphasized its concern for Hester's business should the company's valuable trade secrets be disclosed.

Heat & Control argues that the district court abused its discretion and erred in concluding (1) that Hester carried its burden to demonstrate that the subpoena was unreasonable and oppressive, (2) that the information sought could be obtained from other sources, and (3) that Hester's trade secrets warranted absolute protection from discovery (without explaining how this could be done if the information was obtained from other sources).

■ Under Fed.R.Civ.P. 45(b)(1), a district court may quash or modify a subpoena if it finds that to grant such discovery would be "unreasonable and oppressive." *Ariel,* 693 F.2d at 1060. "Rule 45(d) covers subpoenas for taking depositions and permits them to require the production of designated documents which are within the scope of the examination permitted by Rule 26(b), subject however to the provisions of Rule 30(b)[8] and Rule 45(b)." *Covey Oil Co.,* 340 F.2d at 997. Thus, rule 45(b)(1) must be read in light of Rule 26(b). *Centurion Industries, Inc. v. Warren Steurer and Associates,* 665 F.2d 323, 325 (10th Cir.1981).

Made explicit in the first sentence of Rule 26(b)(1) is the policy that, generally, discovery is to be sufficiently broad to reach "any matter, not privileged." *Deitchman,* 740 F.2d at 559. However, in recognition that there is a potential for abuse in such a policy, Rule 26(b)(1) was amended in 1983 to require the district court to compare the potential hardship to the party against whom discovery would be granted with that to the party to whom discovery would be denied. *Id.;* Fed.R.

---

**6.** This rule is set forth in note 7, *infra.*

**7.** The relevant portion of Rule 26 is set forth below, with the additional language from the 1983 amendment underscored:

(b) Discovery Scope and Limits. Unless otherwise limited by order of the court in accordance with these rules, the scope of discovery is as follows:

(1) *In General.* Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery.... It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

*The frequency or extent of use of the discovery methods set forth in subdivision (a) shall be limited by the court if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive....*

**8.** *See* note 11, *infra.*

Civ.P. 26(b)(1) Notes of Advisory Committee on Rules, 1983 Amendment.

■ The commentators state that "[t]he objective is to guard against redundant or disproportionate discovery by giving the court authority to reduce the amount of discovery that may be directed to matters that are otherwise proper subjects of inquiry." With respect to Rule 26(b)(1)(i), the commentators note that it "is designed to minimize redundancy in discovery and encourage attorneys to be sensitive to the comparative costs of different methods of securing information." However, the commentators caution that "the court must be careful not to deprive a party of discovery that is reasonably necessary to afford a fair opportunity to develop and prepare the case." Fed.R.Civ.P. 26(b)(1) Notes of Advisory Committee on Rules, 1983 Amendment. Thus, the factors required to be balanced by the trial court in determining the propriety of a subpoena are the relevance of the discovery sought, the requesting party's need, and the potential hardship to the party subject to the subpoena. *Deitchman*, 740 F.2d at 560, 564.

■ Hester contends that Heat & Control has not demonstrated that the information it seeks is relevant. Relevance under Rule 26(b)(1) has been construed more broadly for discovery than for trial. *Centurion Industries, Inc.*, 665 F.2d at 326. Although courts with jurisdiction over ancillary or discovery matters should be cautious in determining what is relevant evidence to the main action, this is because of their unfamiliarity with the main action. Where there is doubt over relevance, the rule indicates that the court should be permissive. *Deitchman*, 740 F.2d at 566.[9] In this case, although the court considered the potential hardship to Hester resulting from the discovery sought by Heat & Control, it

erred in not assessing its relevance and Heat & Control's need for the information.

■ The information sought from Hester regarding the CFOs and their operation appears to be highly relevant to Heat & Control's infringement action. Moreover, facts regarding Hester's activity in the design and development of the CFO and its purchase and operation of the first and original version of the CFO from Stein would appear to be uniquely available from Hester. Heat & Control has alleged in its infringement action that Stein had actual knowledge of Heat & Control's patents through Loew, Heat & Control's trusted employee during the period it designed and developed the CFO and process of the patents in suit; that Loew was provided with confidential designs, specifications, and drawings of Heat & Control's oven and process; that after Loew's termination, he was requested to return the confidential documents, but did not do so; and that Loew "embarked upon a program of designing equipment, including the infringing CFO oven which was designed by Mr. Loew for STEIN, using the confidential technical and business information of H & C."

■ Although Hester argues that this information is available from other sources, it has not supported the argument with specific evidence. No other purchaser of a CFO appears to have participated in the production of the CFOs as Hester did. Moreover, even if similar information were available from other purchasers,[10] use of the discovery rules avoids the necessity of pursuing each alleged infringing purchaser in the hopes that one would provide the information necessary to support the allegations of infringement against the seller. Accordingly, we conclude that, on the record before us, the district court's determination that the information in the posses-

---

**9.** "[T]he Federal Rules 'permit the broadest possible scope of discovery and leave it to the enlightened discretion of the district court to decide what restrictions may be necessary in a particular case.'" (Citations omitted.)

**10.** The position Hester takes with respect to this information is inherently contradictory. How can information, for which Hester claims trade secret protection, *see infra*, be at the same time available from other sources? We need not address this paradox in light of our discussion and holding.

sion of Hester is available from other sources is erroneous.

 Hester argues that the discovery, should it be permitted, would destroy its commercial viability by indiscriminately revealing to the market its trade secrets, so that the subpoena is "unreasonable and oppressive." Hester argues further that Heat & Control has not demonstrated that the information it seeks, in the nature of trade secrets, is necessary; also, that the discovery requested by Heat & Control is too extensive and unmanageable for a company the size of Hester. The burden of proving that a subpoena is oppressive is on the party moving to quash and is a heavy one. *Northrop Corp.*, 751 F.2d at 403. The burden is greater still when relief is requested before discovery has commenced. *Horizon Titanium Corp.*, 290 F.2d at 425. Rule 26(c)(7) permits the court "for good cause shown" [11] to make "any order which justice requires to protect a party ... from annoyance, embarrassment, oppression, or undue burden ... including ... that a trade secret ... not be disclosed or be disclosed only in a designated way." When a court is confronted with a motion to quash, its duty is not to deny discovery altogether, but to reduce the demand to a reasonable level, considering the parties' concerns. *Deitchman*, 740 F.2d at 560. Rule 26(c) gives the court the responsibility and power to fashion an order balancing the parties' interests.

In *Centurion Industries, Inc.*, a leading case on discovery involving trade secrets, the Tenth Circuit stated:

"[T]here is no absolute privilege for trade secrets and similar confidential information. To resist discovery under Rule 26(c)(7), a person must first establish that the information sought is a trade secret and then demonstrate that its disclosure might be harmful. If these requirements are met, the burden shifts to the party seeking discovery to establish that the disclosure of trade secrets is

relevant and necessary to the action. The district court must balance the need for the trade secrets against the claim of injury resulting from disclosure.[6] If proof of relevancy or need is not established, discovery should be denied. On the other hand, if relevancy and need are shown, the trade secrets should be disclosed, unless they are privileged or the subpoenas are unreasonable, oppressive, annoying, or embarrassing.

---

6 "The need for accommodation between protecting trade secrets, on the one hand, and eliciting facts required for full and fair presentation of a case, on the other hand, is apparent. Whether disclosure should be required depends upon a weighing of the competing interests involved against the background of the total situation, including consideration of such factors as the dangers of abuse, good faith, adequacy of protective measures, and the availability of other means of proof." Advisory Committee Note to Rule 5–08 of the proposed Federal Rules of Evidence, 46 F.R.D. [161] at 271.

665 F.2d at 325–26 (footnote and citations omitted).

 We agree with the Tenth Circuit and we believe that, should the Fourth Circuit speak, it would also follow the logical approach of the Tenth Circuit on this issue: that the selective disclosure of protectable trade secrets is not *per se* "unreasonable and oppressive" when appropriate protective measures are imposed.

We are satisfied, as indicated above, that the information sought by Heat & Control *is* relevant and necessary, although the district court is required to balance those factors with the potential hardship to Hester should the information sought be provided Heat & Control. Hester, however, has not thus far established that the discovery Heat & Control seeks would be burdensome to it. Moreover, we are not persuaded that Hester has sufficiently described the nature of the trade secrets it desires to protect to warrant total nondis-

---

**11.** At least one circuit has concluded that "good cause" requirement Rule 26(c)(7) is satisfied by facts supporting the "relevance and need" standard in former Rule 30(b). *Centurion Industries, Inc.*, 665 F.2d at 325 n. 4.

closure,[12] or has shown why a proper protective order would not adequately protect its trade secrets. In view of the foregoing, we hold that the district court abused its discretion by failing to seek accommodation of the interests of the parties as required by the Federal Rules.

The order quashing the subpoena is *vacated* and the case is *remanded* to the district court for further proceedings in accordance with this opinion. If the court determines that Heat & Control is entitled to discovery, the court may impose any limitations or conditions upon discovery that it deems appropriate, including the issuance of a protective order.

VACATED and REMANDED.