FLAMINGO FISHING CORP., et al., Plaintiffs,

v.

The UNITED STATES, Defendant.

No. 90-578T.

United States Claims Court.

March 1, 1991.

Daniel D. Levenson, Boston, Mass., for plaintiffs. Richard B. Schafer, Lourie & Cutler, P.C., of counsel.

Robert J. Higgins, Washington, D.C., with whom was Asst. Atty. Gen. Shirley D. Peterson, for defendant.

## ORDER

NETTESHEIM, Judge.

On January 18, 1991, at a status conference in this tax refund case, the parties informed the court of an unfolding discovery dispute. This conflict arose upon defendant's refusal to provide documents and information requested in plaintiffs' First Set of Interrogatories and First Request for Production of Documents, both dated December 21, 1990. Pursuant to court instruction, defendant filed its Motion for Protective Order pursuant to RUSCC 26(c) on January 28, 1991.

## FACTS

Plaintiffs are owners and operators of commercial fishing vessels out of the port of New Bedford, Massachusetts. In their complaint filed on June 27, 1990, plaintiffs assert that the Federal Insurance Contributions Act ("FICA") and the Federal Unemployment Tax Act ("FUTA") do not compel them to pay taxes for each individual crew member on the basis that these workers are not employees subject to the taxes. Plaintiffs seek a refund from the Internal Revenue Service (the "IRS") of FICA, FUTA, and federal income taxes withheld from the wages of their employees.

Plaintiffs are members of the New Bedford, Massachusetts fishing community. One owner operates the "scalloper" *Edgartown*. A scalloper drags a dredge along the ocean bottom. Two other owners operate "draggers" that haul nets in which fish are caught. The number of crew members on these different types of vessels varies. Crew members do not receive wages, but are paid from the proceeds, if any, from the sale of each day's catch. Plaintiffs agree that crew members are "employees."

The mate, cook, and engineer are paid a stipend over and above their crew share because they perform services at sea in addition to their normal duties of sorting and cleaning the catch. This stipend, ranging from $15.00 to $75.00 per trip, according to plaintiffs, is called a "per." Pursuant to a union agreement in 1982, the

amount of the "per" payable by union vessel owners was determined by use of a "sliding scale" as a percentage of gross proceeds. Plaintiffs claim that they sought the sliding scale under a union agreement providing that crew members will be excepted from the definition of "employee" for purposes of paying FICA, FUTA, and income taxes.

Congress exempted certain crew members from employment and income taxes in 26 U.S.C. (I.R.C.) § 3121(b)(20) (1988), by providing that the term "employment" shall not include:

> service ... performed by an individual on a boat engaged in catching fish or other forms of aquatic animal life under an arrangement with the owner or operator of such boat pursuant to which
> (A) such individual does not receive any cash remuneration (other than as provided in subparagraph (B)),
> (B) such individual receives a share of the boat's (or the boats' in the case of a fishing operation involving more than more than one boat) catch of fish or other forms of aquatic animal life or a share of the proceeds from the sale of the catch, and
> (C) the amount of such individual's share depends on the amount of the boat's (or the boats' in the case of a fishing operation
>
> involving more than one boat) catch of fish or other forms of aquatic animal life,
> **but only if the operating crew of such boat (or each boat from which the individual receives a share in the case of a fishing operation involving more than one boat) is normally made up of fewer than 10 individuals.**

(Emphasis added.) There are no regulations implementing the statutory language quoted in boldface. Treas.Reg. 31.-3121(b)(20)–1(a)(1)(ii), 26 C.F.R. § 31.3121(b)(20)–1(a)(1)(ii) (1990), requires that a crew member's share "depends solely on the amount of the boat's ... catch of fish." Rev.Rul. 77–102, 1977–1 C.B. 299, determined that a payment of $25.00 that does not depend on the amount of the boat's catch fails to meet the requirements of I.R.C. § 3121(b)(20)(C). However, plaintiffs contend that the number of employees and calculation of pers satisfy the exemption criteria of section 3121(b)(20)(C).

Plaintiffs further assert that the IRS failed to give them adequate notice of the duty to withhold in respect of both the issue regarding the meaning of "normally" and the issue regarding the calculation of pers based on the sliding scale.

The ultimate issue for decision is whether plaintiffs overpaid their taxes. The parties identified the following subsidiary issues in their Joint Preliminary Status Report filed on November 5, 1990:

1) Whether amounts paid to crew members of a fishing vessel constitute wages pursuant to I.R.C. § 3121(a) of the Internal Revenue Code?

2) Whether such amounts paid to crew members were excepted from the definition of wages by section 3121(b) on the grounds that either:

a) the crew of the vessel *Edgartown* was either "normally made up of fewer than 10 individuals," § 3121(b)(20); or

b) the amounts paid to the crew of the *Edgartown* were actually "Pers" (additional compensation to the mate, cook, and engineer) which were determined by a sliding scale found in the union contract, § 3121(b)(20); or

c) the amounts paid to the crew of the *Seel* were actually Pers which were determined on a flat, non-guaranteed basis, § 3121(b)(20)?

3) Whether, if the amounts paid by plaintiffs constituted wages under section 3121(a), the Internal Revenue Service (the "IRS") correctly determined that § 3509 of the IRC should not apply in calculating the assessments made against plaintiffs?

Plaintiffs in their opposition refine their version of these issues:

1. Statutory interpretation of Section 3121(b)(20) of the Code.

a. Does the word "normally", as used in the statute, mean "average", as contended by the plaintiff Flamingo, or "more often than not", as contended by the defendant?

b. Should the "normal crew size", be measured on a calendar quarter basis, as contended by the plaintiff [defendant?], or should it be measured on the basis of a 12 month period, as contended by the plaintiff Flamingo?

c. If the Court determines that "normally" means "more often than not", did the I.R.S. apply that standard correctly to plaintiff Flamingo?

d. Does the payment of a flat $25.00 per (or multiple thereof), which is derived only from the proceeds of the sale of the catch, cause the per recipient to fall outside of the provisions of Section 3121(b)(20)?

e. Does the payment of a per in accordance with the "sliding scale" cause the per recipient to fall outside of the provisions of Section 3121(b)(20)?

2. Did the plaintiffs (and the entire industry in the New Bedford area) receive adequate notice from the I.R.S. of their employment tax responsibilities....

Plaintiffs' First Set of Interrogatories consists of 34 questions. Interrogatory No. 1 concerns whether a public hearing was held concerning a proposed Treasury Regulation. Interrogatory Nos. 2 and 3 ask for information regarding an IRS employee. Interrogatory Nos. 4 through 7 pertain to whether, since January 1, 1983, the IRS applied section 3509 in a final resolution of any case involving sections 3121(a) and (b). Interrogatory Nos. 8 through 10 address whether, between January 1, 1977 and December 31, 1984, it was determined that crew members of a "scalloper" were subject to taxation because the "normal" size of the crew equalled or exceeded ten.

Interrogatory Nos. 11 and 12 concern whether the IRS publicly defined the word "normally" and what method was utilized in applying any such definition. Interrogatory Nos. 15 to 18 seek information regarding whether any audits of commercial fishing vessels based in Massachusetts were conducted from January 1, 1893, to December 31, 1984. Interrogatory Nos. 19 and 20 concern the same issues as 15 to 18, but focus on whether the vessels audited were "scallopers" or "draggers," and whether the owner of any such vessel paid "pers" on a sliding scale or flat-rate basis.

Interrogatory Nos. 21 to 26 pertain to the same general issues as Interrogatory Nos. 15 through 20, but focus on "draggers" or "scallopers" with a home port of Fairhaven in New Bedford, Massachusetts; these interrogatories also inquire into the underlying analysis and final outcome of any such audit. Interrogatory Nos. 26 and 27 concern the IRS' definition of "project audit," and the reasons why such an audit would be undertaken. Interrogatory Nos. 28 through 34 involve the project audit of fishing vessels in the New Bedford area, as well as the validity of the sliding scale, the identity of the project manager, and the person responsible for authorizing the project audit.

Plaintiffs' First Request for Production of Documents consists of ten items, which can be categorized loosely into four groups. Group 1 comprising Request Nos. 2 and 5 seeks the text of IRS Technical Memoranda. Group 2, which includes Request Nos. 3 and 4, covers reports made by IRS agents who were involved in the case against plaintiffs. Group 3, Request Nos. 6 and 7, concerns written comments by third parties and Department of Treasury representatives relating to proposed Treasury regulations and I.R.C. provisions. Group 4 consists of Request Nos. 1, 9, and 10, and is an amalgam of requests encompassing, respectively, the text of an IRS publication, information concerning the tax returns of plaintiffs' workers, and the entire file relating to issuance of Rev.Rul. 77–102. Plaintiffs withdrew Request No. 8 concerning a General Counsel Memorandum before defendant's motion was filed.

In their responsive brief, plaintiffs withdrew Interrogatory Nos. 1–7 and 13–14 and Request for Production Nos. 4–9.

## DISCUSSION

Defendant asks the court to strike or limit the scope of all interrogatories and production requests. RUSCC 26(b)(1) sets forth the boundaries that discovery requests may not cross:

Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action,.... It is not ground for objection that the information sought will be inadmissable at the trial if the information sought appears reasonably calculated to lead to the discovery of admissable evidence.

Defendant argues that "[p]laintiffs' first set of interrogatories ... are uniformly without relevance to this *de novo* proceeding as they concern either the administrative proceedings in this case or the history of the regulations or other publications of the ... [IRS] with respect to the statutory, or regulatory, language at issue...." Def's Mot. filed Jan 28, 1991, at 7. Defendant further contends that none of the information requested in the interrogatories is relevant or can lead to admissable evidence. Privilege is claimed regarding some of these interrogatories. Defendant asserts that it would bear an undue burden if required to respond to these interrogatories. Concerning plaintiffs' request for production of documents, defendant makes the same objections. Defendant also contends that some of the requested information can be found in the public domain and that some requested material infringes on the privacy rights of plaintiffs' workers.

A trial court enjoys wide latitude in overseeing the conduct of discovery. "Questions of the scope and conduct of discovery are, of course, committed to the discretion of the trial court." *Florsheim Shoe Co. v. United States,* 744 F.2d 787, 797 (Fed.Cir. 1984) (citing cases). The policy behind RUSCC 26(b)(1) envisions that discovery be sufficiently broad to reach any relevant unprivileged matter. RUSCC 26(b)(1); *Heat and Control, Inc. v. Hester Indus., Inc.,* 785 F.2d 1017, 1023 (Fed.Cir.1986). When ruling on a motion for a protective order, "the court may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense...." RUSCC 26(c). However, a " 'court must be careful not to deprive a party of discovery that is reasonably necessary to afford a fair opportunity to develop

and prepare the case.' " *Heat and Control, Inc.,* 785 F.2d at 1024 (quoting Fed.R. Civ.P. 26(b)(1) Notes of Advisory Committee on Rules, 1983 Amendment). To accommodate these potentially conflicting goals, the trial court must balance "the relevance of the discovery sought, the requesting party's need, and the potential hardship to the party subject to the ... [discovery request]." *Heat and Control, Inc.,* 785 F.2d at 1024 (citation omitted); *Truswal Sys. Corp. v. Hydro–Air Eng'g, Inc.,* 813 F.2d 1207, 1210 (Fed.Cir.1987) (quoting *Heat and Control, Inc.).*

Defendant relies on established law that tax refund cases are *de novo* proceedings, *Lewis v. Reynolds,* 284 U.S. 281, 283, 52 S.Ct. 145, 146, 76 L.Ed. 293 (1932); *Dysart v. United States,* 169 Ct.Cl. 276, 283, 340 F.2d 624, 628–29 (1965), and that the correctness of administrative proceedings before the IRS and treatment of other taxpayers are irrelevant. *Dixon v. United States,* 381 U.S. 68, 72–73, 85 S.Ct. 1301, 1304, 14 L.Ed.2d 223 (1965) (citing cases); *Carpenter v. United States,* 7 Cl.Ct. 732, 739–40 (1985) (citing cases).

Plaintiff has made a sufficient showing that its discovery requests aimed at the definition of the word "normally" in the statute, the applicability of the exemption to calculation of pers on a sliding scale, and the adequacy of notice are within the scope of allowable discovery. The IRS is obliged to give adequate notice to an employer of its duty to withhold. *Central Illinois Pub. Serv. Co. v. United States,* 435 U.S. 21, 32, 98 S.Ct. 917, 923, 55 L.Ed.2d 82 (1978); *General Elevator Corp. v. United States,* 20 Cl.Ct. 345, 352 (1990). Defendant takes the position that plaintiffs were cognizant of the duty as they sought the exemption in the legislation that became I.R.C. § 3121(b)(20). The point, however, is that the IRS definition of "normally" may not have been known. In that case, argues defendant, plaintiffs should have framed their discovery requests to ferret out defendant's contentions of fact and its support therefor. Interrogatory Nos. 11–12 ("normally") and 31–33 (pers) embody defendant's suggested framework.

Interrogatory Nos. 8–10, 15–30, and 34 explore the IRS's past practices in determining through specific audits over an 8- to 10-year period that crew members of a scalloper were subject to income taxes because the normal size of the crew was not fewer than 10. These requests run athwart the proscription of I.R.C. § 6103(b)(2)(A), which prevents disclosure of tax return information, including audit information.

Request for Production No. 1 seeks IRS Publication 595 for calendar years 1977–1989 in order to establish that the IRS has not defined "normally." Request No. 2 seeks a Technical Memorandum relating to Treas.Reg. § 3121(b)(20) in respect of the definition of "normally" and the statutory requirement that a crew member only receive a share of the proceeds of the catch. Both these requests are allowable. The third request seeks the revenue agent's full report for each corporate plaintiff. Plaintiffs claim that these reports should indicate the earliest date on which the IRS gave them notice of its position. *See Abel Ins. Co. v. United States,* 53 F.R.D. 485, 489 (D.Neb.1972) (order requiring production of revenue agent's report). Defendant has failed to show how these reports are privileged. Request No. 3 is allowable, as well.

Request No. 10 calls for the entire file relating to the issuance of Rev.Rul. 77–102. In its reply brief, defendant says that it has not waived its objection on the ground of privilege which "cannot be addressed until the file, if its exists, is reviewed, and the Internal Revenue Service determines if the assertion of executive privilege is appropriate." Def's Br. filed Feb. 25, 1991, at 5–6. Defendant has the shoe on the wrong foot. Defendant is the party moving for a protective order. In preparing its motion, defendant was required to ascertain whether a claim to privilege would protect otherwise discoverable materials from disclosure. RUSCC 26(c)(4). That the court asked defendant to file a motion for protective order so as to resolve the outstanding disputes speedily did not absolve defendant of this responsibility.

However, defendant also claims that the facts regarding another taxpayer are irrelevant. This objection should be resolved before determining privilege. *Pierson v. United States,* 428 F.Supp. 384, 390 (D.Del. 1977). If defendant relies on this revenue ruling, relevance of the file will be unassailable. Therefore, Request No. 10 will be allowed, with all information identifying the taxpayer excised, unless defendant advises plaintiff that it will not rely on the Rev.Rul. 77–102 in this litigation.

### CONCLUSION

Based on the foregoing, defendant's motion for protective order is granted with respect to Interrogatory Nos. 8–10, 15–30, and 34. Defendant's motion is denied as to Interrogatory Nos. 11–12 and 31–33 and Request for Production Nos. 1–3 and, provisionally, 10.