6 F.Supp.2d 859 (1998)
PLANT GENETIC SYSTEMS, N.V., Plaintiff,
v.
NORTHRUP KING CO., INC., Defendant.
No. 4:98-MC-0063 CAS.
United States District Court, E.D. Missouri, Eastern Division.
April 24, 1998.
*860 Lisa A. Pake, Kohn and Shands, St. Louis, MO, Rel S. Ambrozy, Burns and Doane, Alexandria, VA, Gerald H. Sullivan, Dorsey and Whitney, Minneapolis, MN, Lori R. Begleiter, White and Case, New York City, Plaintiff.
Matthew D. Menghini, Joseph P. Conran, Husch and Eppenberger, St. Louis, MO, Craig M. Lundell, Arnold and White, Houston, TX, for Defendant.

MEMORANDUM AND ORDER
SHAW, District Judge.
This miscellaneous matter came before the Court on April 23, 1998 for hearing on third-party movant Monsanto Company's Motion to Quash Subpoena Duces Tecum and Subpoena Ad Testificandum Served by Plant Genetic Systems, N.V.

Background.
Monsanto is a non-party to the underlying action captioned Plant Genetic Systems, N.V. v. Northrup King Co., Inc., 174 F.R.D. 330 (D.Del.1997) in the United States District Court for the District of Delaware.[1] The underlying action is a patent infringement suit brought by Plant Genetic Systems, N.V. ("PGS") against Northrup King Co., Inc. ("NK"). PGS alleges that NK in marketing certain seed corn products has infringed two of PGS's patents which recite (i) plant cells containing a DNA fragment which encodes Bacillus thuringiensis ("B.t.") protein, and (ii) chimeric genes comprising a DNA fragment which encodes a B.t. protein. The presence of this protein renders the corn plants insect resistant.
PGS contends that Monsanto developed the B.t. protein and supplied certain B.t. genetic sequences to NK, including the B.t. sequence contained in the insect-resistant B.t. corn NK sells in the United States. PGS contends that Monsanto retains relevant information concerning how the gene was sequenced, which is vital to PGS's patent infringement claims against NK. Monsanto represented to the Court that approximately a dozen lawsuits are pending across the country concerning B.t. technology, and that it is a party to three or four of the suits.
In June 1997, PGS served a subpoena duces tecum on Monsanto pursuant to Rule 45, Federal Rules of Civil Procedure, seeking information on seven topics concerning Monsanto's development of the B.t. gene that it had licensed to NK. (PGS Ex. 1.)[2] After a Protective Order concerning PGS, NK and Monsanto was entered in the underlying action, Monsanto produced approximately 2700 documents pursuant to the subpoena. (PGS Ex. 1.)
After reviewing the documents produced by Monsanto, PGS concluded that NK had failed to produce certain documents concerning the Monsanto-NK relationship, despite *861 PGS's detailed requests for their production. PGS also concluded that under the Monsanto-NK licensing arrangement, Monsanto had not disclosed to NK some of the information which PGS contends is vital to proving its patent infringement action.
Subsequently, on January 30, 1998, PGS served a subpoena ad testificandum on Monsanto pursuant to Rule 30(b)(6), Fed.R.Civ. P., which did not include a description of the matters on which examination was requested. (PGS Ex. 4.) After Monsanto objected to the lack of specificity, informal contact ensued among counsel. (PGS Ex. 5.) On February 27, 1998, PGS served on Monsanto a replacement subpoena ad testificandum accompanied by a subpoena duces tecum (collectively, the "replacement subpoena"), which scheduled a 30(b)(6) deposition on March 2, 1998. (PGS Ex. 6.)
The replacement subpoena includes a list of ten deposition topics (PGS Ex. 7), and sought the production of "All documents or things used, referred to or reviewed in preparing to testify concerning" any of the ten deposition topics, or "which refer to, relate to, refute, support or discuss" any of the topics. (PGS Ex. 8.) The ten listed deposition topics generally parallel those of the June 1997 subpoena, but are more detailed and include additional topics.

Discussion.
Monsanto filed its motion to quash on March 17, 1998, alleging that (i) it was not given a reasonable time in which to comply with the replacement subpoena; (ii) the replacement subpoena is unduly burdensome, as the information sought from Monsanto is readily available from NK in the underlying action; and (iii) the replacement subpoena is unreasonably cumulative and duplicative of information PGS can obtain from NK, and PGS has had ample opportunity to obtain this information in the underlying action. In its reply memorandum, Monsanto also states it has already provided the information PGS claims it needs, i.e., "`the sequence of Monsanto's B.t. gene, as well as the amino acid sequence of the B.t. protein produced by Monsanto's B.t. gene in Novartis' B.t. corn[.]'"[3] Finally, Monsanto contends that PGS's replacement subpoena is actually an attempt by PGS to gain access to a competitor's confidential and proprietary research and development information.
PGS responds that (i) the information it seeks is highly relevant to its case, (ii) despite numerous discovery requests in the underlying action, NK cannot or will not produce the information PGS needs and Monsanto is the only source of the information, (iii) PGS' subpoena is not duplicative as it seeks Monsanto documents only "to the extent not yet already produced"; and (iv) PGS and Monsanto had agreed prior to service of the replacement subpoena that the noticed date could be modified for Monsanto's convenience, and the Court under Rule 45(c)(3)(A) may modify the date.
In pertinent part, Rule 45(c)(3)(A) provides that a subpoena shall be quashed or modified if it fails to allow a reasonable time for compliance, or subjects a person to undue burden. Rule 45(c)(3)(B) provides that a subpoena may be quashed or modified if it requires disclosure of confidential research, development or commercial information.
"[T]he factors required to be balanced by the trial court in determining the propriety of a subpoena are the relevance of the discovery sought, the requesting party's need, and the potential hardship to the party subject to the subpoena." Heat and Control, Inc. v. Hester Indus., Inc., 785 F.2d 1017, 1024 (Fed.Cir.1986).
A determination of relevance in this case implicates the substantive law of patent infringement, and therefore Federal Circuit law is applicable in assessing relevance. See Truswal Systems Corp. v. Hydro-Air Engineering, Inc., 813 F.2d 1207, 1212 (Fed.Cir. 1987) "Relevance under Rule 26(b)(1) is construed more broadly for discovery than for trial." Heat and Control, 785 F.2d at 1024. "A district court whose only connection with a case is supervision of discovery ancillary to an action in another district should be especially hesitant to pass judgment on what constitutes relevant evidence thereunder." *862 Truswal Systems, 813 F.2d at 1211-12 (internal punctuation and citation omitted).
PGS contends the information it seeks from Monsanto is highly relevant to the underlying action because (i) Monsanto supplied NK with the B.t. genetic sequence contained in the insect  resistant B.t. corn NK sells in this country; (ii) this genetic sequence is in essence the blueprint for the B.t. protein produced by the NK B.t. corn as it grows, which makes the corn toxic to insects; (iii) this genetic sequence and its operation lie at the heart of the claimed inventions of PGS's patents; and (iv) the presence of this genetic sequence in the NK B.t. corn product forms the basis of PGS's claims of patent infringement against NK.
The Court agrees that the information sought by PGS appears to be highly relevant to its infringement action. Further, PGS has made a sufficient showing that it needs this information, and cannot obtain it elsewhere despite diligent attempts to do so through discovery in the underlying action. Monsanto's assertion that the information is readily available from NK appears to be contradicted by documents submitted to the Court under seal, which indicate that key facts concerning the B.t. genetic sequence may be uniquely available from Monsanto because, inter alia, they were not provided to NK under the Monsanto-NK agreements.[4]
Finally, Monsanto has done little more than make the bare assertion that it is burdensome for it to comply with the replacement subpoena. "The burden of proving that a subpoena is oppressive is on the party moving to quash and is a heavy one." Heat and Control, 785 F.2d at 1025 (citation omitted). Although Monsanto has produced 2700 documents and one of its scientists for deposition in his individual capacity in the underlying action, it has not specified the time or resources necessary to comply with the replacement subpoena or indicated how compliance would actually be burdensome. Further, because Monsanto is a party to several of the actions concerning B.t. technology pending in the United States, it would seem likely the requested witness and documents have already been or will have to be produced elsewhere.
Finally, the Court notes that Monsanto's claim concerning disclosure of confidential research and development information is undercut by the existence of the Protective Order in the underlying action, to which Monsanto is a signatory. Counsel for PGS represented in open court that under the terms of the Protective Order, any documents which Monsanto designates as "restricted confidential" will be seen only by outside legal counsel, and not by counsel or other employees of Monsanto's competitors. Counsel for Monsanto did not dispute this representation.

Conclusion.
For the foregoing reasons, the Court is satisfied that the information sought by PGS is relevant and necessary, and Monsanto will not be unduly burdened by compliance with the replacement subpoenas. The Court concludes, therefore, that Monsanto's motion to quash should be denied. The Court will, however, enforce PGS's replacement subpoena only to the extent Monsanto has not already complied therewith.
Accordingly,
IT IS HEREBY ORDERED that third-party movant Monsanto Company's Motion to Quash Subpoena Duces Tecum and Subpoena Ad Testificandum Served by Plant Genetic Systems, N.V. is DENIED. [Doc. 1]
IT IS FURTHER ORDERED that Monsanto Company shall comply with the replacement subpoena issued on behalf of Plant Genetic Systems, N.V. within fourteen (14) days of the date of this order.
NOTES
[1] The parties state that the caption of the underlying action has been amended to reflect the merger of Ciga-Geigy A.G. and Sandoz, Ltd., which resulted in the dissolution of Northrup King (a division of Sandoz, Ltd.) and the formation of Novartis Seeds, Inc. For ease of reference, the Court will continue to refer to the defendant in the underlying action as Northrup King, rather than Novartis.
[2] References are to exhibits attached to PGS's Response to Monsanto's Motion to Quash.
[3] Monsanto's Reply at 2.
[4] PGS states that a document labeled "Appendix A" accompanying its Response to the Motion to Quash includes information designed by NK as "restricted confidential" in the underlying action's Protective Order. PGS further states that in accordance with the terms of the Protective Order, Appendix A was submitted to the Court under seal, and was not included in the service copy of the response served on Monsanto.